STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, v. PATRICK T. MURPHY, Guardian of the Estate of Jessie Stewart, Incompetent, Defendant-Appellant.

First District (5th Division)   No. 1—92—4096

Opinion filed April 29, 1994.

Alan C. Hoffman & Associates, of Chicago (Alan C. Hoffman and Linda C. Bell, of counsel), for appellant.

Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago (Roger LeRoy, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Defendant, Patrick T. Murphy (Murphy), guardian of the estate of Jessie Stewart (Stewart), appeals from the order of summary judgment entered against him in an insurance coverage dispute. The trial court held that plaintiff, State Farm Mutual Automobile Insurance Company (State Farm), had no liability to Stewart because his policy benefits were offset by the worker's compensation benefits he had received. On appeal, Murphy argues that the circuit court erred by: (1) failing to find the setoff provision in the insurance policy contrary to public policy; and (2) failing to find the setoff provision ambiguous.

We affirm.

## BACKGROUND

The facts of the instant case are not disputed. On February 3, 1985, Stewart, a Chicago fire department employee, was involved in

an accident with a car driven by Gilberto Cisneros (Cisneros). As a result of the accident, Stewart sustained multiple permanent bodily injuries including, *inter alia*, paralysis, muscle atrophy, loss of bowel and bladder control, and an inability to take nourishment by mouth. In short, Stewart was rendered totally dependant upon others to perform the activities of daily living.

At the time of the accident, Stewart was driving a car owned by the City of Chicago (City) and acting in the course of his employment. Pursuant to the Illinois Pension Code (40 ILCS 5/1—101 *et seq.* (West 1992)), the City provided payments in excess of $100,000 for hospital and medical expenses incurred by Stewart in connection with his injuries. The City did not provide payments for pain and suffering or actual bodily injuries, such as permanent disfigurement.

Although Cisneros was insured by Reliable Insurance Company at the time of the accident, he became an uninsured motorist when the insurance company was placed in liquidation. Stewart was covered by a State Farm automobile liability policy, which included uninsured motor vehicle coverage benefits of up to $100,000 per person and up to $300,000 per accident. The policy contained the following limit of liability provision:

"UNINSURED MOTOR VEHICLE—COVERAGE U

\* \* \*

Limits of Liability

\* \* \*

2. Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured*:  ·

\* \* \*

    c. under any worker's compensation, disability benefits, or similar law."

Sometime after the accident, Stewart submitted a claim to State Farm for uninsured motor vehicle coverage. In response, State Farm filed a complaint against Patrick T. Murphy, as Stewart's guardian, seeking a judgment declaring that the policy did not provide uninsured coverage for the accident of February 3, 1985, because the payments made by the City for Stewart's medical and healthcare expenses totally offset the coverage limits of $100,000. State Farm then moved for summary judgment, asserting that it was entitled to judgment as a matter of law. After hearing argument, the trial court granted summary judgment in favor of State Farm, declaring that there was no uninsured motorist coverage available to Murphy, as guardian of Stewart. This appeal followed.

OPINION

# I

Initially, Murphy contends that under the unique facts of this case, enforcement of the worker's compensation setoff provision would violate the public policy underlying the Illinois Insurance Code (215 ILCS 5/1 *et seq.* (West 1992)). The Illinois Insurance Code requires that every automobile liability policy issued in this State must provide uninsured motorist vehicle coverage in an amount not less than the limits described in the financial responsibility law (625 ILCS 5/7—203 (West 1992)). (See 215 ILCS 5/143a (West 1992).) As our supreme court explained in *Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d 1, 4, the purpose of this provision is "to place the policyholder in substantially the same position he would occupy *** if the wrongful driver had had the minimum liability insurance required by the Financial Responsibility Act."

Our supreme court has previously construed the worker's compensation setoff and concluded that it does not violate the public policy underlying the uninsured motorist statute. (See *Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507; *Ullman*, 48 Ill. 2d 1.) In *Ullman*, the plaintiff's decedent was killed by an uninsured motorist, and his employer paid $14,000 in worker's compensation benefits. The decedent had carried uninsured motorist coverage in the amount of $10,000 per person, and the plaintiff sought to recover this amount from the insurer. However, the insurer maintained that it was entitled to offset the worker's compensation benefits against its maximum liability and, therefore, it owed nothing. The plaintiff sought a judgment declaring that the worker's compensation setoff provision violated the public policy behind the uninsured motorist statute. The plaintiff argued that the statute manifested a legislative intent to prevent an insurer from reducing its liability below the minimum provided in the financial responsibility law, by any method, including a reduction for worker's compensation benefits.

In holding for the defendant, the court based its decision on the fact that the Workers' Compensation Act (820 ILCS 305/5 (West 1992)) required an employee who had received compensation under the Act to reimburse the employer from any recovery the employee received from a third party legally responsible for the employee's injuries. The court reasoned:

"[I]f the deduction challenged here is permitted, the employee's position is the same under the uninsured motorist's coverage as it would be had the tortfeasor carried the minimum insurance. Where the tortfeasor is insured, the employee reimburses his employer in full from the recovery from the tortfeasor. Where the tortfeasor is uninsured, the benefits paid by the employer are

deducted from the recovery. If the benefits paid by the employer exceed the amount payable under the coverage, as here, the insurance carrier is without liability. In neither instance does the employee retain both compensation from the employer and identical damages from the tortfeasor. The deduction provision does not cause the employee with uninsured motorist's coverage to have less financial protection than he would have had if the tortfeasor had carried insurance in the minimal amount." *Ullman*, 48 Ill. 2d at 7.

Here, Murphy argues that the rule of *Ullman* was modified in *Hoglund v. State Farm Mutual Automobile Insurance Co.* (1992), 148 Ill. 2d 272. Murphy asserts that under *Hoglund*, the worker's compensation setoff is only enforceable if it acts to prevent a double recovery by the insured. Murphy argues that Stewart's damages greatly exceed the amount the City has paid and, therefore, there is no danger of double recovery.

In *Hoglund*, the plaintiff was injured in part by an uninsured motorist and in part by an insured motorist; the plaintiff's total damages exceeded $200,000. The insured motorist paid $100,000 to the plaintiff. The plaintiff then sought to recover the $100,000 limit of uninsured motorist coverage from its insurer, State Farm. However, plaintiff's policy contained a setoff provision stating that any amounts paid or payable to the insured "by or for any person or organization who is or may be held legally liable for the bodily injury to the insured." (Emphasis omitted.) (*Hoglund*, 148 Ill. 2d at 275.) State Farm argued that because the insured had received $100,000 from a legally liable party, State Farm was entitled to a $100,000 setoff and, therefore, owed the plaintiff nothing.

The supreme court rejected State Farm's argument, finding that it would frustrate the purpose of the uninsured motorist statute, which is to place the insured in substantially the same position as if the uninsured driver had been insured. (*Hoglund*, 148 Ill. 2d at 279-80.) The court explained:

"If, for instance, the uninsured motorcycle driver had been insured for $100,000, Miss Hoglund could have collected that sum in full from that driver's insurer, along with the $100,000 she collected from the other insured driver. The separate collections of $100,000 from each of the two culpable drivers would have fully compensated her for her $200,000 in damages. State Farm's position, however, is to insist that it receive a full setoff for the payment made on behalf of the insured driver. Such a result would violate the public policy behind the uninsured motorist statute that the injured party be placed in the same position as if the uninsured driver had been insured." (*Hoglund*, 148 Ill. 2d at 280.)

The court held that the insurer was entitled to a setoff only to the extent necessary to prevent a double recovery. *Hoglund*, 148 Ill. 2d at 280-81.

Murphy's reliance on *Hoglund* is misplaced. The rule of *Hoglund* is limited to factual situations involving more than one tortfeasor. (See *Banes v. Western States Insurance Co.* (1993), 247 Ill. App. 3d 480, 483.) In *Hoglund*, the supreme court determined that where *more than one tortfeasor* causes injury, public policy would be violated if the injured party's insurance company were allowed to deduct the amount paid by the insured tortfeasor from its liability for uninsured motorist coverage, except where necessary to prevent double recovery. (*Hoglund*, 148 Ill. 2d at 279-81.) On the other hand, where *only one party is at fault*, like the case at bar, the supreme court has held that public policy is not violated by allowing an insurer to deduct worker's compensation benefits, so long as the insured does not end up in a worse situation than he would have been in if the party at fault had been minimally insured. See *Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548; *Stryker*, 74 Ill. 2d 507; *Ullman*, 48 Ill. 2d 1.

■ The case at bar is analogous to *Ullman*. At the time of the accident, the minimum required amount of uninsured motorist coverage was $15,000, and Stewart actually carried $100,000 of uninsured motorist coverage. However, Stewart's employer paid him $100,000 in benefits. Allowing Stewart's insurer to set off the $100,000 of benefits against its liability for uninsured motorist coverage does not place Stewart in a worse situation than he would have been in if the driver had carried the $15,000 minimum amount of insurance. This is so because if the driver had been minimally insured for $15,000, Stewart's employer would have been able to seek that amount from the driver.

■ Murphy next contends that this case is distinguishable from *Ullman* and its progeny because unlike the plaintiffs in those cases, Stewart received benefits under the Pension Code, and not under the Workers' Compensation Act. Murphy points out that under the Workers' Compensation Act, the employer acquires a lien on all funds that an employee recovers and no such lien accrues under the Pension Code. Instead, under the Pension Code the employer only acquires a right of subrogation which he must take affirmative steps to enforce. (*Sullivan v. Sudiak* (1975), 30 Ill. App. 3d 899.) Murphy hypothesizes that a case could arise under the Pension Code where the employer forgoes its right of subrogation, thus allowing the employee to keep worker's compensation benefits as well as damages received from the insured tortfeasor.

Murphy invites this court to compare the hypothetical situation to the situation at bar. He argues that since Stewart received only worker's compensation benefits and nothing under his uninsured motorist policy, but he could have received both worker's compensation benefits and damages if his employer did not exercise its rights, he was put in a worse situation by enforcement of the setoff provision. We disagree. In our view, the rule established by the supreme court in *Ullman* was premised upon the employer's *right* to reimbursement from an employee's recovery of damages. This rule does not depend upon whether the employer chooses to exercise its rights. (See, *e.g.*, *Stryker*, 74 Ill. 2d 507.) Thus, we conclude that the fact that no lien is established in favor of the employer under the Pension Code, unlike the Workers' Compensation Act, is a distinction without a difference; *Ullman* controls the outcome of this case.

## II

■ Finally, Murphy argues that a latent ambiguity exists in the policy regarding how the worker's compensation setoff is to be applied. A latent ambiguity exists in an insurance contract "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." (*Hoglund*, 148 Ill. 2d at 279.) Under Illinois law, any ambiguity in an insurance policy must be construed in favor of coverage for the insured. *Hoglund*, 148 Ill. 2d at 280.

The setoff reads as follows: "[a]ny amount payable under this coverage shall be reduced by any amount *** payable to *** the *insured* *** under any worker's compensation *** or similar law." (Emphasis in original.) Murphy takes issue with the words "amount payable under this coverage." Murphy concedes that under a literal interpretation of the policy, State Farm's liability is to be computed by subtracting the worker's compensation benefits from the amount of uninsured motorist coverage, $100,000. However, Murphy argues that if we take into account other language from the policy as well as Stewart's reasonable expectations, another interpretation is possible. Murphy argues that State Farm's liability could be computed by subtracting the worker's compensation benefits from Stewart's *total loss*, which greatly exceeds $100,000.

Murphy argues that the language, "[w]e will pay damages for **bodily injury** that an **insured** is entitled to collect from the owner or driver of an **uninsured motor vehicle**," supports his contention. However, when read in the context of the entire policy, we fail to see how this language aids Murphy's position. In light of the fact that

Stewart purchased $100,000 of insurance, it is not reasonable to interpret the words "amount payable" to mean any amount greater that $100,000.

Murphy also argues that the setoff provision is ambiguous when examined in light of Stewart's reasonable expectations. Murphy argues that because Stewart purchased more than the minimum required amount of uninsured motorist coverage ($15,000), he had a reasonable expectation of receiving more than the minimum coverage. Murphy points out that if the setoff is applied literally, he would receive the same amount of coverage regardless of whether he purchased $15,000 or $100,000—nothing. He argues that it is reasonable to expect more for $100,000 of coverage than $15,000, especially since State Farm received more money from Stewart.

Murphy's argument is not well taken. The fact that Stewart would receive the same amount of coverage under the facts of this case regardless of whether he purchased the $15,000 minimum or $100,000 can be attributed to how much his employer paid in worker's compensation benefits, and not how the setoff provision is applied. As the supreme court observed in *Sulser*, the insurer's liability under an uninsured motorist policy might range from 0% to 100% depending upon the amount of worker's compensation benefits paid by the employer. (See *Sulser*, 147 Ill. 2d at 557.) Here, Stewart's employer paid over $100,000. Thus, whether Stewart had coverage of $15,000 or $100,000, State Farm would owe nothing. However, if his employer had paid only $15,000 in benefits, Stewart would receive nothing from State Farm if he had $15,000 in coverage, and $85,000 from State Farm if he had $100,000 of coverage. Stewart was entitled to compensation of $100,000 for his injuries. However, he was not necessarily entitled to collect the total $100,000 from his insurer, but only that portion of the $100,000 which was not recovered from worker's compensation. (See *Sulser*, 147 Ill. 2d at 556.) The fact that Stewart may have expected a different result does not render the policy ambiguous.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

MURRAY, P.J., and McNULTY, J., concur.