TERESA GILLEN, Special Adm'r of the Estate of Scott Gillen, Deceased, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.

First District (6th Division)  No. 1—03—2762

Opinion filed June 25, 2004.

Joseph A. Power, Jr., and Devon C. Bruce, both of Power, Rogers & Smith, P.C., of Chicago, for appellant.

Frank C. Stevens, of Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago, for appellee.

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiff-appellant Teresa Gillen, as special administrator of the estate of Scott Gillen, deceased (Teresa), brought a declaratory judgment action against defendant-appellee State Farm Mutual Automobile Insurance Company (State Farm). State Farm moved for judgment on the pleadings and the trial court granted this motion, thereby dismissing the cause in its favor with prejudice. Teresa appeals, contending that the trial court should have denied State Farm's motion; accordingly, she asks that we reverse the trial court's decision below. For the following reasons, we reverse.

## BACKGROUND

Teresa and Scott Gillen purchased an automobile liability insurance policy from State Farm in early 2000. Contained in the policy was a clause providing for uninsured motorist coverage and listing as the policy limit under this coverage an amount of $100,000 per person insured. Teresa and Scott personally and consistently paid all premiums on the policy to State Farm, and the policy remained in effect as their primary automobile coverage. Paragraph 2 of the uninsured motorist coverage provision, entitled "Limits on Liability," stated:

> "Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured under any worker's compensation, disability benefits, or similar law." (Emphasis omitted).

On December 23, 2000, Scott, a City of Chicago firefighter/paramedic, was on duty and responded to an accident on Interstate 94. While working at the site, he was struck by an uninsured motorist. He was taken to a hospital and treated, but died the same day. His medical bills totaled $76,612.10. Because of Scott's employment, he was entitled to a pension from the City of Chicago. Accordingly, under the Illinois Pension Code (40 ILCS 5/1—101 et seq. (West 1998)), the City of Chicago paid all of Scott's medical expenses as part of his pension.

Teresa then made a claim with State Farm under her and Scott's automobile insurance policy for $100,000, the policy limit with respect to their uninsured motorist coverage. Employing paragraph 2 of the uninsured motorist coverage provision, State Farm "set off" the amount the City of Chicago paid for Scott's medical bills from the policy limit and gave Teresa a check for $23,387.90 as payment in full.

Teresa brought a declaratory judgment action seeking a declaration that State Farm was not entitled to set off the full amount of the policy against Scott's pension because paragraph 2 of the insurance policy did not apply to pensions as paid by her husband's employer and because allowing such a setoff violated public policy. State Farm answered and moved for judgment on the pleadings. Conceding that Scott's medical bills were paid not from "worker's compensation" or "disability benefits" but, rather, from benefits relating to his pension, State Farm asserted that this payment nevertheless fell under the auspices of paragraph 2's setoff provision contained in the Gillens' automobile insurance policy. The trial court granted State Farm's motion, entered judgment on the insurer's behalf and dismissed the cause with prejudice.

## ANALYSIS

On appeal, Teresa argues much in the same manner as she did in the trial court below. That is, her principle assertion is that State Farm is prohibited from "setting off" the amount of medical benefits the City of Chicago paid pursuant to Scott's pension from the full policy limit of $100,000 found in the uninsured motorist clause of the Gillens' automobile insurance policy with State Farm. Teresa supports her position by arguing that paragraph 2 of the policy containing the setoff provision does not list medical payments made pursuant to a pension as a setoff option and by arguing that to allow a setoff of such pension benefits would violate public policy. In response, State Farm relies principally on the case of *State Farm Mutual Automobile Insurance Co. v. Murphy*, 263 Ill. App. 3d 100 (1994), and its citations to *Ullman v. Wolverine Insurance Co.*, 48 Ill. 2d 1 (1970), for the proposition that our court (as well as our state supreme court) has already addressed and rejected the arguments Teresa now brings, and accordingly, we are bound to hold the same. It is our view that Teresa's arguments prevail, and to the extent *Murphy* presses to the contrary, it must be abrogated.

The parties do not dispute the applicable standard of review here. As noted earlier, this cause arrives before us upon the grant of State Farm's motion for judgment on the pleadings. A trial court may properly enter such a judgment only where no genuine issue of mate-

rial fact exists and the moving party is entitled to judgment as a matter of law. See *H&M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 209 Ill. 2d 52, 57 (2004); accord *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 255 (2001). In the instant case, the trial court was required to examine the pleadings and determine whether there was an issue of fact or whether the controversy was resolvable as a matter of law. See *Employers Reinsurance Corp. v. E. Miller Insurance Agency, Inc.*, 332 Ill. App. 3d 326, 334 (2002). On appeal, we, as the reviewing court, must ascertain whether that court correctly determined that the pleadings presented no such issue and whether State Farm, as the movant, was in fact entitled to the judgment it received. See *H&M Commercial*, 209 Ill. 2d at 57; *Employers Reinsurance*, 332 Ill. App. 3d at 334. The appropriate standard of review for this is *de novo*. See *H&M Commercial*, 209 Ill. 2d at 57; *Employers Reinsurance*, 332 Ill. App. 3d at 334.

We find no better place to begin than a direct disagreement with *Murphy* and State Farm's reliance upon it. It is true that the facts of *Murphy* are very similar to those of the instant case. There, while on duty, Chicago fire department employee Jessie Stewart was struck by a car driven by an uninsured motorist and sustained severe permanent bodily injuries. At the time of the accident, Stewart was covered by an automobile liability policy he had purchased from State Farm and upon which he had personally paid premiums. The policy contained an uninsured motorist clause with a coverage limit of $100,000, as well as the exact same language effecting a "set off provision" found in paragraph 2 of the policy at issue in this case, namely, that any amount payable under the coverage "shall be reduced by any amount paid or payable to or for the insured *** under any worker's compensation, disability benefits, or other similar law." As in the instant case, the City of Chicago provided medical payments pursuant to Stewart's pension under the Illinois Pension Code (40 ILCS 5/1—101 *et seq.* (West 1992)) for his healthcare expenses, amounting to a total in excess of the $100,000 policy limit. Stewart then submitted a claim to State Farm for uninsured motorist coverage, and State Farm moved for summary judgment. State Farm relied on the setoff provision in the policy and declared that it was not required to provide any amount because the payments made by the city under Stewart's pension offset the coverage limits, thereby leaving no uninsured motorist coverage available to Stewart since he had received the full policy limit. The trial court agreed with State Farm and Stewart appealed. See *Murphy*, 263 Ill. App. 3d at 102-03.

Upon review, the *Murphy* court immediately turned to a discussion of the Illinois Supreme Court case of *Ullman v. Wolverine Insur-*

*ance Co.*, 48 Ill. 2d 1 (1970) (Ward and Schaefer, JJ., dissenting). In *Ullman*, the issue was a narrow one: whether an insurer could properly deduct worker's compensation payments made to an insured by his employer in determining its liability to the insured under a policy providing for uninsured motorist coverage. See *Ullman*, 48 Ill. 2d at 2. There, the plaintiff's decedent was killed by an uninsured motorist and the decedent's employer paid $14,000 in worker's compensation benefits. The decedent also had an automobile insurance policy containing an uninsured motorist clause with coverage in the amount of $10,000, as well as the same setoff provision found in *Murphy* and the instant case allowing the insurer to offset any amount paid to the insured from " 'any workmen's compensation law, disability benefits law or any similar law.' " *Ullman*, 48 Ill. 2d at 6. The plaintiff sought to recover the full policy amount, but the insurer maintained that it was entitled to offset the worker's compensation benefits against its liability and, because that amount exceeded the policy, it owed nothing. A divided supreme court held for the insurer, basing its decision exclusively on the specific characteristics accompanying worker's compensation. See *Ullman*, 48 Ill. 2d at 7. It noted that the setoff provision in the policy expressly mentioned that any amount paid to the injured person as worker's compensation could be set off by the insurer. The *Ullman* court also highlighted the fact that the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.5(b)) requires an employee who receives compensation under that act to reimburse the employer for any recovery he receives from a third party. See *Ullman*, 48 Ill. 2d at 7. In the unique situation when worker's compensation is paid to an injured employee, a lien in favor of the employer for the amount of the benefits is created and, thus, the employee cannot retain both compensation from his employer and identical damages from the tortfeasor. See *Ullman*, 48 Ill. 2d at 7. If the tortfeasor is insured, the employee must reimburse his employer from any recovery obtained; if the tortfeasor is uninsured, the benefits paid to the employee by the employer are deducted from the recovery. See *Ullman*, 48 Ill. 2d at 7. In neither instance does the employee retain a double compensation. See *Ullman*, 48 Ill. 2d at 7. Instead, to the extent that he receives worker's compensation, the obligation of reimbursement by the employee to the employer in full exists regardless of the final amount recovered. See *Ullman*, 48 Ill. 2d at 8.

Broadly construing the fact-intensive discussion of our supreme court in *Ullman*, the *Murphy* court found that case to be "analogous" to the situation it was analyzing, even though the sum paid at issue in *Murphy* did not arise from worker's compensation as in *Ullman* but, instead, from Stewart's pension as an employee of the City of Chicago.

*Murphy*, 263 Ill. App. 3d at 105. Clearly admitting that such payments under the Illinois Pension Code differ from those made to employees pursuant to the Workers' Compensation Act (820 ILCS 305/5 (West 1992)) because no similar lien is created in favor of the employer with the payment of pension benefits, the *Murphy* court nevertheless concluded that this was "a distinction without a difference." *Murphy*, 263 Ill. App. 3d at 106. The *Murphy* court declared that the medical payments Stewart had received from the city pursuant to his pension qualified as "worker's compensation, disability benefits, *or other similar law*" found in the setoff provision of the uninsured motorist clause. (Emphasis added.) *Murphy*, 263 Ill. App. 3d at 102, 105-06. Thus, the *Murphy* court stretched the reasoning of *Ullman* to hold that State Farm's setoff of Stewart's pension benefits from the $100,000 uninsured motorist policy limit was proper. See *Murphy*, 263 Ill. App. 3d at 105.

The *Murphy* court's reliance on and extension of *Ullman*, and particularly its ultimate conclusion that payments made pursuant to the Illinois Pension Code and the Workers' Compensation Act are "a distinction without a difference," were erroneous.

We make clear that we find no problem with the reasoning applied by our supreme court in *Ullman*, nor with its holding. Instead, we agree that *Ullman* undoubtedly stands on solid ground. The unique characteristic of worker's compensation payments is that an employee is obligated to reimburse his employer for any recovery he receives for his injury from a third party. *Ullman* presented the court with a fact-sensitive situation in which an on-duty employee, struck and killed by an uninsured driver, received worker's compensation, but was also insured with a personal policy containing uninsured motorist coverage. However, the clause in the policy specifically stated that the coverage would be reduced by any amount paid or payable "under any workmen's compensation law," which is exactly what occurred there. Moreover, precisely because the employee in *Ullman* received worker's compensation, a lien was created in favor of the employer and an obligation was created upon the employee to reimburse for any benefit received. For both these reasons, that the insurer set off this payment received by the employee was indeed proper.

The problem arises, however, with the *Murphy* court's misapplication of the *Ullman* holding. *Murphy* dealt not with worker's compensation but, rather, payment of medical benefits under the injured employee's pension. Yet, relying solely on *Ullman*, the *Murphy* court declared that there was no difference between these two situations and, thus, that the phrase "or other similar law" as found in the setoff provision of the insurance policy encompassed the medical pay-

ments made pursuant to the injured employee's pension. As will be demonstrated below, the same unique characteristic of obligatory reimbursement that accompanies a payment made pursuant to worker's compensation is simply not present when dealing with a payment made pursuant to an employee's pension; contrary to *Murphy*'s reasoning, these payments are inherently distinguishable.

Based on a thorough review of our statutes and case law discussing worker's compensation and pension payments, we hold that the important distinction between these concepts is one that we can no longer ignore as the *Murphy* court did. While our supreme and appellate courts have enforced an employer's lien upon an employee's receipt of worker's compensation (see *Ullman*, 48 Ill. 2d at 7), these courts have simultaneously and consistently rendered special protection for employees receiving (or scheduled to receive) payments pursuant to their pensions. In fact, in reviewing the debates that surrounded the creation of the Illinois Pension Code, our supreme court declared that it believes a "general intent" exists to protect the pension benefits of public employees. *Peters v. City of Springfield*, 57 Ill. 2d 142, 151 (1974). From this, our courts have time and again made clear that any reduction, diminution or impairment of pension benefits violates an enforceable contractual relationship between an employee and his employer, impinges upon the employee's constitutional protections, and will not be tolerated. See *Peters*, 57 Ill. 2d at 152 (intent of state constitution is that membership in any pension system shall be enforceable to its fullest and earned pension rights shall not be diminished or impaired); see also *Felt v. Board of Trustees of the Judge's Retirement System*, 107 Ill. 2d 158, 162-63 (1985) (amendment resulting in reduction in pension benefits held to violate state constitution as effecting a contractual impairment); accord *Kraus v. Board of Trustees of the Police Pension Fund*, 72 Ill. App. 3d 833, 843-44 (1979) (officer who joined pension system prior to effective date of new statute reducing pension entitled to pension as calculated on date entered, since purpose of pension rights is that pension should not be diminished and pension rights are entitled to constitutional protection); *Peifer v. Board of Trustees of the Police Pension Fund*, 35 Ill. App. 3d 383, 388 (1976) ("[t]o allow [a] reduction in retirement benefits in our opinion would be a violation of [the employee's] contractual rights and *** the Illinois Constitution"). This is in stark contrast to our courts' treatment of worker's compensation, which consistently imposes the inherent nature of obligatory reimbursement upon the employee.

It is only proper that the difference between worker's compensation and pension payments be here and now labeled a distinction *with*

*import*, and that we conclude once and for all that pension payments are incapable of being classified within an uninsured motorist setoff provision calling for a reduction in coverage of sums paid or payable to the injured under "worker's compensation, disability benefits or other similar law." Jurisdictions across the country have already arrived at this conclusion without hesitation. See *Sisco v. American Family Mutual Insurance Co.*, 806 S.W.2d 409, 410-11 (Mo. 1991) (prohibiting automobile insurer from reducing its liability under policy to insured who had received a retirement benefit upon injury from underinsured motorist, because that benefit did not qualify as a sum paid or payable under "worker's compensation or disability benefits law or any similar law" as contained in setoff provision; retirement benefit was born of entirely different statutory scheme (than worker's compensation) in which legislature intended to establish retirement security); *Kleinheider v. American Family Mutual Insurance Co. of Wisconsin*, 806 S.W.2d 692, 694 (E.D. Mo. 1991) (under same setoff provision, insurer could not set off amount received by employee under Federal Employers' Liability Act because this was not similar to a recovery under a worker's compensation claim, and thus, insurer owed full amount to employee under clause of policy); *Hartford Accident & Indemnity Co. v. Sena*, 42 Conn. 336, 348, 619 A.2d 489, 495-96 (1992) (medical benefits paid to injured by his union did not qualify as "sums paid or payable under any worker's compensation, disability benefits or similar law" and thus could not be set off from amount owed by insurer under policy); *Phelps v. State Farm Mutual Automobile Insurance Co.*, 112 Nev. 675, 682, 917 P.2d 944, 949 (1996) (under same setoff provision, insurer could set off from its liability amount injured worker received as worker's compensation but not amount he recovered from his own private insurance, since that was not "similar law"); see, *e.g.*, *Weatherly v. Flournoy*, 929 P.2d 296, 299 (Okla. Ct. App. 1996).

In addition to this, we find further support for our decision among several strong public policy arguments relevant to the facts of the instant case. Teresa and Scott Gillen, as dutiful citizens of the State of Illinois, purchased uninsured motorist coverage as required by statute. See 215 ILCS 5/143a (West 1992). They purchased this insurance through a personal automobile liability policy from State Farm with their own money and continued to conscientiously make all premium payments to State Farm. This established a contract between the Gillens and State Farm, with the premiums paid by the Gillens forming the consideration for uninsured motorist coverage and securing their ability to collect if they were ever injured by an uninsured motorist, subject only to any amount "paid or payable *** under any worker's compensation, disability benefits, or similar law." As part of a separate

sphere of their life, Scott had a contract with the City of Chicago, working in the capacity of a public employee as a firefighter/paramedic. This established a contract between Scott (and Teresa as his wife) and the city; Scott's work for the city formed the consideration for a pension and secured his entitlement thereunder to receive the payment of any medical costs should he suffer an injury while working. See 40 ILCS 5/1—101 *et seq.* (West 1998). Ill-fatedly, Scott was struck by an uninsured motorist and killed while on duty and responding to the site of an accident. As a pension-holder, he received the full fruits of the contract he had with the city, namely, the medical payments, for which he rendered consideration (his work and ultimately his life). Separate and distinct from his contract with State Farm, these payments arising out of his pension were not explicitly mentioned in the setoff provision of the insurance policy. Accordingly, as a policyholder, he should receive the full fruits of the contract he had with State Farm, for which he had already rendered consideration (the premium payments).

We acknowledge State Farm's argument that this could result in a windfall for Scott. However, it is more logical and legally sound that he and his estate benefit, for Scott both paid premiums out of his own pocket to State Farm to obtain coverage, and worked, separately and distinctly from that contract, for the city to obtain his pension. To allow otherwise would effect a setoff benefitting State Farm for a source of payment it had nothing to do with and failed to employ the foresight to protect itself against within the terms of the insurance policy. The public policy of our state, as well as virtually every other jurisdiction, prohibits this. See *Sears Roebuck & Co. v. Acceptance Insurance Co.*, 342 Ill. App. 3d 167, 171 (2003) (insurance policies are to be liberally construed in favor of coverage); *Johnson Press of America, Inc. v. Northern Insurance Co. of New York*, 339 Ill. App. 3d 864, 871-72 (2003) (burden rests with insurer to demonstrate applicability of exclusion; courts will liberally construe any doubt as to coverage in favor of insured and against insurance company, especially when company seeks to avoid coverage based on alleged exclusion in policy); *Michael Nicholas, Inc. v. Royal Insurance Co. of America*, 321 Ill. App. 3d 909, 914 (2001) (reason to favor coverage is twofold: to effectuate intent of insured who purchased policy to obtain coverage and to lay burden upon insurance company which, as drafter, could have drafted policy and exceptions more clearly and specifically); *A.D. Desmond Co. v. Jackson National Life Insurance Co.*, 223 Ill. App. 3d 616, 620 (1992) (insurance forfeitures are not favored, as insurance serves "important purposes in contemporary society, and courts should be quick to find facts which support coverage"); *Dash Messenger Service Inc. v.*

*Hartford Insurance Co.*, 221 Ill. App. 3d 1007, 1010 (1991) (in "doubtful cases," courts should construe policy in favor of coverage so that insurer does not deprive insured of benefit for which he already paid); *Monsalud v. State Farm Mutual Automobile Insurance Co.*, 210 Ill. App. 3d 102, 108-09 (1991) (if insurer does not "explicitly state" limitation in policy, courts have duty to construe policy in favor of coverage and not to imply alleged limitations); see also *Douthet v. State Farm Mutual Automobile Insurance Co.*, 546 S.W.2d 156, 159-60 (Mo. 1977) (uninsured motorist policy provision which authorizes setoff by amounts payable under separate contract or relationship resulting in the payment of medical bills is void and unenforceable; this causes a reduction of uninsured motorist coverage and such a diminution violates public policy—any windfall "should go to the injured person rather than to the insurer"); see, *e.g.*, *Williams v. Casualty Reciprocal Exchange*, 929 S.W.2d 802 (W.D. Mo. 1996); *State v. Calhoun*, 634 A.2d 335 (Del. 1993); *Pearson v. State Farm Mutual Automobile Insurance Co.*, 109 Ill. App. 3d 649 (1982); *State Farm Mutual Automobile Insurance Co. v. Karasek*, 522 Ariz. App. 87, 523 P.2d 1324 (1974); see *Selected Risks Insurance Co. v. Thompson*, 520 Pa. 130, 141-42, 552 A.2d 1382, 1388 (1989) (noting the "overwhelming majority" of jurisdictions that have held a setoff policy provision for uninsured motorist coverage identical to that present in the instant case to be "invalid" and void as "contrary to public policy" because such coverage is mandated by statute and is paid for by the insured through premiums separate and apart from " 'any worker's compensation, disability benefits or similar law' ").

Finally, we return for a moment to the *Ullman* decision. As noted earlier, our supreme court was divided as to the ultimate holding in that case. We find true wisdom in the words of dissenting Justices Ward and Schaefer:

> "[T]he [setoff] provision drawn by [the insurer] to avoid or reduce its liability to policyholders is contrary to the legislative purpose and to public policy.
>
> *** The legislature knew the driving public would be paying premiums for the [uninsured] coverage the legislature was making mandatory. It is plainly reasonable to say the legislature anticipated that motorists thus insured might acquire benefits that would not otherwise have been available to them.
>
> ***
>
> *** There is no reason to prohibit a so-called double recovery when one of the recoveries by the employee, *i.e.*, the one against an insurance company, is founded in contract and has been made possible by the employee's payment of premiums. *** [This recovery]

is based on a contract the employee has had with a third person, *i.e.*, the insurance company, which for a premium provided him with uninsured motorist's coverage. \*\*\* To deny the employee full recovery is to cause \*\*\* an unjust enrichment of the insurance company to which premiums have been paid.

The majority is concerned by the possibility that if the [setoff] provision is held contrary to public policy it would mean that the injured employee's extent of recovery would hinge on the fortuitous circumstance that the tortfeasor was uninsured. If this is really a cause for concern this concern should be dissipated by a recognition that the employee's recovery against the uninsured driver would be based on this insurance contract for which the employee would have paid a premium to cover the fortuity that he might sustain damage by the conduct of an uninsured driver. What concerns [us] is the implicit construction by the majority that the legislature intended to permit an insurance carrier, by restricting its liability, as here, to financially advantage itself by the fortuitous circumstance that its insured when killed or injured was within the protection of [a separate entity/recovery]." *Ullman*, 48 Ill. 2d at 8-11 (Ward and Schaefer, JJ., dissenting).

In sum, we find that State Farm cannot set off from its policy liability the medical payments made by the City of Chicago as part of Scott's pension upon his death. Because State Farm did not explicitly include mention of such payments in the setoff provision of paragraph 2 of the uninsured motorist clause, and because we find the phrase "worker's compensation, disability benefits, or similar law" contained therein does not encompass these payments, we hold that State Farm was not entitled to judgment on the pleadings and is instead liable to Teresa for the full amount of the uninsured motorist coverage as stated in the automobile policy.[1]

---

[1]State Farm cites two other cases, *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548 (1992), and *Stryker v. State Farm Mutual Automobile Insurance Co.*, 74 Ill. 2d 507 (1978), in support of its claims on appeal. However, *Sulser* involves underinsured motorist provisions and thus is distinguishable from the instant case, and *Stryker*, a case involving worker's compensation, actually reinforces our view that the *Ullman* holding applies narrowly to worker's compensation claims only. Moreover, we note the urgent dissent in *Stryker*, which echoes that of *Ullman* and emphasizes that future courts "should not perpetuate error in the manner which the [*Ullman*] majority opinion does." *Stryker*, 74 Ill. 2d at 514 (Goldenhersh, J., dissenting).

## CONCLUSION

Accordingly, for the foregoing reasons, we reverse the judgment of the trial court.

Reversed.

TULLY and GALLAGHER, JJ., concur.