Docket No. 98919–Agenda 13–March 2005.

TERESA GILLEN, Special Adm’r of the Estate of Scott Gillen, Deceased, Appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant.

Opinion filed May 19, 2005.

JUSTICE FITZGERALD delivered the opinion of the court:

In this appeal we examine a setoff provision in an automobile insurance policy issued by State Farm Mutual Automobile Insurance Company. The setoff provision permits State Farm to reduce its liability for uninsured-motorist coverage by the amount paid to or for the insured “under any worker’s compensation, disability benefits, or similar law.” At issue is whether this provision applies to medical benefits paid by the City of Chicago for one of its employees, pursuant to section 22–306 of the Illinois Pension Code (Pension Code) (40 ILCS 5/22–306 (West 2002)), and the implementing municipal ordinance (Chicago Municipal Code §3–8–190 (1990)).

The trial court ruled in favor of State Farm. The appellate court reversed. 349 Ill. App. 3d 779. We affirm the judgment of the appellate court.

BACKGROUND

 Scott Gillen was employed by the Chicago fire department as a paramedic. On December 23, 2000, he responded to an emergency call for assistance at the scene of a motor vehicle collision. While at the scene, Scott was struck by an uninsured motor vehicle driven by Carlando Hurt. Scott received medical treatment at Christ Hospital, but died the same day from his injuries. The City of Chicago paid Scott’s medical expenses, which totaled $76,612.10. Payment was authorized by a municipal ordinance adopted in accordance with the Pension Code.

Teresa Gillen, Scott’s wife and special administrator of Scott’s estate, made a claim with State Farm for uninsured-motorist benefits in the policy amount of $100,000. The uninsured-motorist provision contains a limitation of liability clause, which states:

“Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured under any worker’s compensation, disability benefits, or similar law.”

Relying on this provision, State Farm set off the $76,612.10 of medical benefits paid by the City of Chicago on behalf of Scott against the $100,000 of uninsured-motorist coverage, and delivered to Teresa a check for the balance of $23,387.90. Teresa subsequently filed a complaint for declaratory judgment in the Cook County circuit court (see 735 ILCS 5/2–701 (West 2002)), seeking a declaration that State Farm is not entitled to a setoff under the policy language and as a matter of public policy. State Farm moved for judgment on the pleadings. See 735 ILCS 2–615(e) (West 2002). State Farm argued that the setoff provision “had the approval” of this court (see 
Ullman v. Wolverine Insurance Co.
, 48 Ill. 2d 1 (1970)) and had been found to apply to benefits received by Chicago fire department personnel under the Pension Code (see 
State Farm Mutual Automobile Insurance Co. v. Murphy
, 263 Ill. App. 3d 100 (1994)). The trial court granted State Farm judgment on the pleadings, dismissing Teresa’s complaint with prejudice. Teresa appealed.

On appeal, Teresa argued that the setoff provision does not list medical payments made pursuant to a pension as a setoff option, and enforcing the setoff provision against pension benefits would violate public policy. State Farm argued, as it did in the trial court, that under 
Ullman
 and
 Murphy
 the setoff was valid. The appellate court reversed: “It is our view that Teresa’s arguments prevail, and to the extent 
Murphy
 presses to the contrary, it must be abrogated.” 349 Ill. App. 3d at 781.
 Thus, the appellate court held that State Farm was not entitled to a setoff and was liable to Teresa for the full amount of the uninsured-motorist coverage. 349 Ill. App. 3d at 789. We allowed State Farm’s petition for leave to appeal. See 177 Ill. 2d R. 315.

ANALYSIS

I. Standard of Review

Judgment on the pleadings is proper where the pleadings disclose no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 
M.A.K. v. Rush-Presbyterian-St. Luke’s Medical Center
, 198 Ill. 2d 249, 255 (2001);
 Employers Insurance of Wausau v. Ehlco Liquidating Trust
, 186 Ill. 2d 127, 138 (1999). In ruling on a motion for judgment on the pleadings, the court will consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. 
M.A.K.
, 198 Ill. 2d at 255. All well-pleaded facts and reasonable inferences therefrom are taken as true. 
M.A.K.
, 198 Ill. 2d at 255; 
Employers Insurance of Wausau
, 186 Ill. 2d at 138. On review, we must determine whether any issues of material fact exist and, if not, whether the movant was entitled to judgment as a matter of law. 
H&M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.
, 209 Ill. 2d 52, 57 (2004). Our review proceeds 
de novo
. 
M.A.K.
, 198 Ill. 2d at 255.

II. Statute and Ordinance Authorizing Medical Payments

Preliminarily, we review the statute and ordinance under which the City of Chicago paid Scott’s medical expenses.

In 1921, the Illinois legislature adopted “An Act authorizing cities and villages to provide for the payment of allowances of money to the families or dependents of policemen and firemen killed or fatally injured while in the performance of their duties.” Ill. Rev. Stat. 1921, ch. 24, par. 867 
et seq
. In 1929, the statute was amended to authorize cities and villages to provide medical care and hospital treatment in case of an accident to a policeman or fireman. Ill. Rev. Stat. 1929, ch. 24, par. 869a. This provision, which was incorporated into the Illinois Municipal Code of 1961 (Ill. Rev. Stat. 1961, ch. 24, par. 10–6–4), later became section 22–306 of the Pension Code (Ill. Rev. Stat. 1963, ch. 108½, par. 22–306). Since its incorporation into the Pension Code in 1963, the relevant language of section 22–306 has remained the same. It reads:

“The corporate authorities of any city or the village may provide by ordinance that in case of an accident resulting in an injury to or death of a policeman or fireman in the employ of such city or village while in the performance of his duties, the officer at the head of the department or such other officer as may be designated may secure and provide proper medical care and hospital treatment for any such policeman or fireman. The city or village may incur the expense aforesaid and appropriate and pay for the same.

If any such accident shall be due to the negligence of some person or corporation that would be liable in damages therefor, the city or village may recover any expense of medical care and hospital treatment expended by it from the person or corporation liable.” 40 ILCS 5/22–306 (West 2002).

Pursuant to this legislative grant of authority, the City of Chicago enacted an ordinance providing for such medical payments. At the time of Scott’s injury and death, the ordinance read in relevant part as follows:

“Whenever the city council shall appropriate a sum or sums of money for the payment of medical care and hospital treatment in case of an accident resulting in an injury to or death of a policeman or fireman employed by the city while in the performance of his duties, in accordance with the provisions of an act of the general assembly entitled ‘An Act authorizing cities and villages to provide for the payment of allowances of money to the families or dependents of policemen and firemen killed or fatally injured while in the performance of their duties and authorizing such cities and villages to provide medical care and hospital treatment in case of accident to policemen and firemen,’ approved June 27, 1921, as amended, the same shall be paid, disbursed and recouped in accordance with the following provisions.” Chicago Municipal Code §3–8–190 (1990).
(footnote: 1)
Mirroring section 22–306 of the Pension Code, the ordinance also provided that the City of Chicago may recover payments from the person liable for the injury:

“In the event that the ** committee on finance is of the opinion, from all the facts and circumstances presented to it *** or otherwise ascertained by it, that such injury was occasioned by the negligence of some other person, or by the negligence of any agent or servant of such other person, the committee on finance shall so notify the corporation counsel; and it shall be the duty of the corporation counsel forthwith to demand from such other person reimbursement for the amount expended by the city for the necessary medical care and hospital treatment of such policeman or fireman; and in default of payment of such amount so expended, the corporation counsel shall institute proceedings to recoup for the city the amount so expended, as provided in the aforesaid act of the general assembly.” Chicago Municipal Code §3–8–220 (1990).

With this background, we turn to the parties’ arguments.

III. Setoff Provision

State Farm does not dispute the underlying facts that gave rise to Teresa’s claim for uninsured-motorist benefits. Nor does State Farm dispute that Teresa is entitled to receive uninsured-motorist benefits. The only issue is whether State Farm may reduce its liability by deducting the amount of medical benefits the City of Chicago paid on Scott’s behalf from the $100,000 otherwise due under the policy. The setoff clause provides that uninsured-motorist benefits “shall be reduced by any amount paid or payable to or for the insured under any worker’s compensation, disability benefits, or similar law.” The payments made by the City of Chicago were not workers’ compensation or disability benefits. Accordingly, we focus on the phrase “any *** similar law.”

State Farm acknowledges that this court has not addressed the validity of a setoff under the “similar law” language. State Farm maintains, however, that this court, in 
Ullman v. Wolverine Insurance Co.
, 48 Ill. 2d 1 (1970), established the approach to use in determining whether a setoff is valid and, using that approach, the setoff here was proper.

In 
Ullman
, the policy contained a setoff clause, similar to one at issue here, which reduced the insurer’s liability for uninsured-motorist coverage “ ‘by the amount paid *** under any workmen’s compensation law, disability benefits law or any similar law.’ ” 
Ullman
, 48 Ill. 2d at 6. Pursuant to this clause, the insurer deducted workers’ compensation payments made to the insured by his employer from the uninsured-motorist benefits otherwise payable under the policy. The plaintiff argued that this setoff violated public policy. We rejected this argument.

We first determined the purpose of the provision in the Illinois Insurance Code mandating that every automobile liability policy include uninsured-motorist vehicle coverage in an amount not less than the limits described in the Financial Responsibility Law (Ill. Rev. Stat. 1969, ch. 95½, par. 7–203, now 625 ILCS 5/7–203 (West 2002)). See Ill. Rev. Stat. 1969, ch. 73, par. 755a, now 215 ILCS 5/143a (West 2002). The purpose of this provision was to place the policyholder in substantially the same position he or she would have occupied had the wrongful driver carried the minimum liability insurance required by statute. 
Ullman
, 48 Ill. 2d at 4. Next, turning to the Workers’ Compensation Act (Act), we observed that an employee who receives compensation under the Act is required to reimburse his employer from any recovery the employee receives from a third party legally responsible for the employee’s injuries. See Ill. Rev. Stat. 1969, ch. 48, par. 138.5(b), now 820 ILCS 305/5(b) (West 2002). The employee may only retain that portion of the recovery from the third-party tortfeasor that exceeds the benefits received under the Act. 
Ullman
, 48 Ill. 2d at 7. We concluded that if the insurer was permitted to deduct workers’ compensation benefits from the amount otherwise due under the uninsured-motorist coverage, the employee’s position was the same as it would have been had the tortfeasor carried the minimum insurance and that this result did not offend public policy. We explained:

“Where the tortfeasor is insured, the employee reimburses his employer in full from the recovery from the tortfeasor. Where the tortfeasor is uninsured, the benefits paid by the employer are deducted from the recovery. *** In neither instance does the employee retain both compensation from the employer and identical damages from the tortfeasor. The deduction provision [in the policy] does not cause the employee with uninsured motorist’s coverage to have less financial protection than he would have had if the tortfeasor had carried insurance in the minimal amount. Were we to hold it is contrary to public policy, it would mean that an injured employee’s extent of recovery *** would hinge on the fortuitous circumstance that the tortfeasor was uninsured and was not otherwise financially responsible. We do not consider that a policy limitation which precludes this result is offensive to public policy.” 
Ullman
, 48 Ill. 2d 23 at 7-8.

State Farm contends that under 
Ullman
, the validity of a setoff is determined by comparing the result for the insured if the setoff is allowed with the result if the tortfeasor had been insured. According to State Farm, “[w]here the insured is no worse off with the setoff applied, the setoff is allowed.” Applying this approach, State Farm argues that the setoff at issue here is valid. State Farm notes that, under the municipal ordinance the city has the right to recover from the third-party tortfeasor the medical payments it made on Scott’s behalf. See Chicago Municipal Code §3–8–190 (1990). Thus, had Carlando Hurt carried $100,000 of insurance, the city would have been entitled to recoup the $76,612.10 it paid for Scott’s medical expenses, leaving Teresa the difference of $23,387.90–the same amount State Farm tendered to her as uninsured-motorist benefits. State Farm concludes that allowing the setoff places Teresa in no worse position than she would have occupied had Hurt been comparably insured and thus, under 
Ullman
, the setoff is proper. State Farm’s argument assumes too much.

In 
Ullman
, the insurer took a setoff for workers’ compensation benefits in accordance with an 
explicit
 policy provision, and the only issue was whether the setoff violated public policy. In this case, however, State Farm has set off benefits paid pursuant to the Pension Code and corresponding municipal ordinance for which no explicit provision is contained in the policy. Accordingly, a threshold issue exists as to whether such a setoff is even permitted under the policy language which Teresa contends is ambiguous. Only if this court determines that the setoff clause does, in fact, permit the deduction State Farm seeks would the public policy considerations that we addressed in 
Ullman
 arise. Thus, contrary to State Farm’s claim, 
Ullman
 does not necessarily control the outcome of this case and does not compel a decision in State Farm’s favor. Cases State Farm cites which applied our holding in 
Ullman
 are also not controlling. See 
Sulser v. Country Mutual Insurance Co.
, 147 Ill. 2d 548 (1992); 
Stryker v. State Farm Mutual Automobile Insurance Co.
, 74 Ill. 2d 507 (1978); 
Scudella v. Illinois Farmers Insurance Co.
, 174 Ill. App. 3d 245 (1988); 
Pearson v. State Farm Mutual Automobile Insurance Co.
, 109 Ill. App. 3d 649 (1982). 
Sulser
, 
Stryker
 and 
Scudella
 all involved an insurer’s setoff for workers’ compensation benefits under an express policy provision. Again, the policy at issue here does not expressly permit the setoff that State Farm seeks. In 
Pearson
, the insurer set off salary payments made to a disabled police officer against uninsured-motorist benefits. The setoff was made pursuant to a policy provision providing a reduction in benefits for payments the insured received under a “disability benefits law.” The appellate court concluded that even if the setoff clause was otherwise applicable, it was void as against public policy. That is, the setoff clause placed the officer in a worse position than the officer would have occupied had the wrongful driver maintained the minimum liability coverage. 109 Ill. App. 3d at 651-52. Plainly, 
Pearson
 does not address the issue before us today.

State Farm also relies on 
State Farm Mutual Automobile Insurance Co. v. Murphy
, 263 Ill. App. 3d 100 (1994). Although 
Murphy
 is factually similar to the case at bar, State Farm’s reliance on it is misplaced. In 
Murphy
, Jessie Stewart, an employee of the Chicago fire department, was involved in an automobile accident while on duty, sustaining severe permanent injuries. Patrick Murphy, the public guardian, was appointed Stewart’s guardian. Pursuant to the Pension Code (40 ILCS 5/1–101 
et seq.
 (West 1992)), the city paid Stewart’s hospital and medical expenses which were in excess of $100,000. Although the at-fault driver was insured at the time of the accident, the driver was rendered uninsured when the insurance company was placed in liquidation. Stewart thus submitted a claim for uninsured-motorist benefits with his own insurer, State Farm, for the uninsured-motorist limits of $100,000. The State Farm policy issued to Stewart contained a setoff clause identical to the one at issue here, permitting State Farm to reduce uninsured-motorist benefits by the amount of benefits the insured received “ ‘under any worker’s compensation, disability benefits, or similar law.’ ” 
Murphy
, 263 Ill. App. 3d at 102. State Farm sought a declaration that no uninsured-motorist coverage was available to Stewart by virtue of the setoff clause. State Farm reasoned that because the policy benefits were more than offset by the benefits Stewart received from the city, State Farm had no liability. The trial court agreed with State Farm.

On appeal, the public guardian argued, in pertinent part, that the setoff provision was contrary to public policy. The appellate court, relying on 
Ullman
, rejected this argument. 
Murphy
, 263 Ill. App. 3d at 101-05. Significantly, the appellate court in 
Murphy
 was never asked to consider the argument Teresa makes here, namely, that the setoff clause does not permit a deduction for benefits paid pursuant to the Pension Code and should not be so construed. Thus, 
Murphy
 does not persuade us that the setoff State Farm seeks is proper under the policy language.
(footnote: 2)
 We turn now to Teresa’s argument and review the principles applicable to judicial construction of an insurance policy. Our primary objective when construing an insurance policy is to ascertain and give effect to the intention of the parties, as expressed in the policy language. 
Hobbs v. Hartford Insurance Co.
, 214 Ill. 2d 11, 17 (2005); 
Travelers Insurance Co. v. Eljer Manufacturing, Inc.
, 197 Ill. 2d 278, 292 (2001). The construction we give to an insurance policy should be a natural and reasonable one. 
De Los Reyes v. Travelers Insurance Cos.
, 135 Ill. 2d 353, 358 (1990). Undefined terms will be given their plain, ordinary and popular meaning, 
i.e.
, they will be construed with reference to the average, ordinary, normal, reasonable person. 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 115 (1992). If the policy language is susceptible to more than one reasonable meaning, it is considered ambiguous and will be construed against the insurer. 
Travelers Insurance Co.
, 197 Ill. 2d at 293. Importantly, a policy provision that purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are clear, definite, and specific. 
National Union Fire Insurance Co. of Pittsburgh, Pennsylvania v. Glenview Park District
, 158 Ill. 2d 116, 123 (1994). Applying these rules of construction, we conclude that the setoff provision must be construed in favor of Teresa and against State Farm.

The explicit language of the setoff clause refers only to deductions for payments made “under any worker’s compensation, disability benefits, or similar law.” Teresa argues that, on its face, the clause does not permit deductions for the type of payments at issue here–payments made pursuant to section 3–8–190 of the Chicago Municipal Code and section 22–306 of the Pension Code–and that the phrase “similar law” is too vague to include this ordinance and code provision. State Farm maintains, however, that case law establishes that the ordinance and code provision are similar to the Workers’ Compensation Act (820 ILCS 305/1 
et seq.
 (West 2002)), and that the payments at issue may be deducted from uninsured-motorist benefits because they were made under a “similar law.” See 
Mitsuuchi v. City of Chicago
, 125 Ill. 2d 489, 493 (1988) (observing, in the context of a negligence suit by a police officer against a fellow officer, that the “statutory mechanism” at work in sections 22–306 and 22–307 of the Pension Code is “similar” to the Workers’ Compensation Act); 
Fligelman v. City of Chicago
, 275 Ill. App. 3d 1089, 1091 (1995) (in the context of a negligence action by a police officer against the City of Chicago, citing 
Mitsuuchi
 for the proposition that the legislature intended, in the Pension Code, “to motivate municipalities to provide their employees with protections available to other workers under the Workers’ Compensation Act”); 
Sweeney
 
v. City of Chicago
, 131 Ill. App. 2d 537, 542 (1971) (in the context of a personal injury suit by a police officer against the City of Chicago, noting that the “system created for the compensation of injured police officers under the Illinois Pension Code is analogous to that established by the Workmen’s Compensation Act”).

State Farm’s argument misses the mark. The issue is not whether any Illinois court has found a similarity between the Pension Code and the Workers’ Compensation Act. Rather, the issue is whether the average person, for whom the policy is written, would reasonably understand that State Farm’s liability for uninsured-motorist coverage would be limited for payments made pursuant to section 22–306 of the Pension Code and implementing municipal ordinance. In other words, is the setoff clause “clear, definite and specific”? See 
National Union Fire Insurance Co.
, 158 Ill. 2d at 123. We believe the answer is “no.” The phrase “worker’s compensation, disability benefits or similar law” would not convey to the average, ordinary, normal, reasonable person an intention to include our pension statute within the setoff clause of the policy. See 
Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America
, 411 Ill. 325, 334 (1952) (“Courts should not adopt gossamer distinctions which the average [person] for whom the policy is written cannot possibly be expected to understand”); 
Goetze v. Franklin Life Insurance Co.
, 26 Ill. App. 3d 104, 109 (1975) (premium receipt for temporary coverage must be “sufficiently clear for a layman to understand”); 
Manchester Insurance & Indemnity Co. v. Universal Underwriters Insurance Co.
, 5 Ill. App. 3d 847, 855 (1972) (“inexpert layperson” will not be charged with “the responsibility of making or procuring independent technical legal opinions regarding what coverage they are buying” and “are entitled to rely on language which purports to cover”).

Even if we concluded that the setoff clause, reasonably construed, could convey to the average policyholder that State Farm’s liability would be reduced by payments made under the Pension Code and municipal ordinance, at best this results in an ambiguity. That is, construing the setoff clause to include benefits authorized by the Pension Code would compete with the equally reasonable construction excluding such benefits. “Where competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation it will follow. *** Rather, in such circumstances, the court must construe the policy in favor of the insured and against the insurer that drafted the policy.” 
Employers Insurance of Wausau
, 186 Ill. 2d at 141.

We note that “the insurer has the capacity to draft intelligible contracts.” 
Goetze
, 26 Ill. App. 3d at 108, citing 12 J. Appleman, Insurance Law & Practice, ch. 263, §7222, at 203 (Supp. 1974). Had State Farm intended to include a setoff for payments made in accordance with the Pension Code, it easily could have modified the policy language to so provide. Indeed, the substantive language of section 22–306 of the Pension Code has not changed in 40 years. Compare Ill. Rev. Stat. 1963, ch. 108½, par. 22–306, with 40 ILCS 5/22–306 (West 2002). Moreover, State Farm conceded at oral argument that it was aware of no other statute which, in its view, would qualify as a “similar law.” Thus, State Farm’s failure to include an explicit reference to section 22–306 or otherwise make plain that its liability for uninsured-motorist coverage will be reduced for payments made pursuant to section 22–306 is inexplicable. Under these circumstances we cannot allow State Farm to avoid its obligation under the policy. State Farm must honor Teresa’s claim for uninsured-motorist coverage with no offset for the medical benefits paid by the City of Chicago.

In light of our holding that the setoff clause does not include payments made pursuant to the Pension Code, we need not address Teresa’s additional argument that a setoff for pension benefits would violate Illinois public policy.

CONCLUSION

We conclude that the trial court erred in entering judgment on the pleadings in favor of State Farm. Accordingly, we affirm the judgment of the appellate court reversing the judgment of the circuit court and entering judgment in favor of Teresa Gillen.

Affirmed
.

JUSTICE THOMAS took no part in the consideration or decision of this case.

FOOTNOTES
1:     
1
The ordinance has since been amended to include the appropriate citation to the Pension Code. See Chicago Municipal Code §3–8–190 (amended March 31, 2004).

2:     
2
Tangentially, we note that the appellate court expressed its strong disagreement with 
Murphy
, stating that it “must be abrogated.” 349 Ill. App. 3d at 781. To the extent the appellate court intended to overrule 
Murphy
, any such attempt was improper. A decision of our appellate court may only be reversed or overruled by this court. See 21 C.J.S. 
Courts 
§152 (1990) (“the decision of an intermediate appellate court is the law of the state or jurisdiction until such decision is reversed or overruled by the court of last resort”); J. Eaton,
 Resolving Conflicts in the Illinois Appellate Court
, 78 Ill. B.J. 182 (1990) (“The Illinois appellate system was structured on the assumption that the supreme court would resolve conflicts between districts, divisions, or panels of the appellate court”). This does not mean that the appellate court was bound by 
Murphy
 if it believed that 
Murphy
 was wrongly decided. See 
Schiffner v. Motorola, Inc.
, 297 Ill. App. 3d 1099, 1102 (1998) (“
stare decisis
 requires courts to follow the decisions of higher courts, but does not bind courts to follow decisions of equal or inferior courts”); 
Garcia v. Hynes & Howes Real Estate, Inc.
, 29 Ill. App. 3d 479, 481 (1975) (opinions of any appellate court are not binding on other branches of the appellate court); 14 Ill. L. & Prac. 
Courts
 §81 (1968) (“In general, a court is not bound to follow an erroneous decision of an equal or inferior court”). The appellate court was free to part company with 
Murphy
, but as a court of equal dignity it had no authority to “abrogate” that decision.