In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-2810

FARMERS AUTOMOBILE INSURANCE ASSOCIATION,

*Plaintiff/Counterdefendant-Appellant*,

*v.*

ST. PAUL MERCURY INSURANCE COMPANY,

*Defendant/Counterplaintiff-Appellee*.

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 05-1331—**Michael M. Mihm**, *Judge*.

———————

ARGUED JANUARY 16, 2007—DECIDED APRIL 10, 2007

———————

Before EASTERBROOK, *Chief Judge*, and POSNER and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. The Farmers insurance company bought what is called "Employment Practices Liability" coverage from St. Paul insurance company. The coverage is for "Employment Wrongful Acts," broadly defined to include any error, misstatement, neglect, breach of duty, etc., in connection with an alleged wrongful dismissal, sexual harassment, retaliation, or other unlawful treatment of an employee. See generally *Krueger Int'l, Inc. v.*

*Royal Indemnity Co.*, No. 06-2611 (7th Cir. Apr. 9, 2007). Coverage was triggered, Farmers alleges in this diversity suit against St. Paul, when a class action was filed in an Illinois state court against Farmers on behalf of its claims adjusters, seeking overtime pay pursuant to the Illinois Minimum Wage Law, 820 ILCS 105/4a(1), the state's counterpart to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (2000 & Supp. 2006). (The suit is pending.) St. Paul refused coverage, pointing to an exclusion in the insurance policy for

> any actual or alleged violation of the *Fair Labor Standards Act* (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Reconciliation Act of 1983, the Occupational Safety and Health Act, any workers' compensation, unemployment insurance, social security, or disability benefits law, *other similar provisions of any* federal *state* or local *statutory* or common *law* or any rules or regulations promulgated under any of the foregoing.

(Emphasis added.) The Fair Labor Standards Act is of course the federal minimum wage and overtime pay law, and so the question is whether Illinois's statutory overtime pay provision is "similar." The district judge answered yes and granted summary judgment for St. Paul. Farmers has appealed. The question of similarity is one of contract interpretation to be answered, the parties agree, under Illinois law.

It is curious to see an insurance company, in the role of insured, asking a court to make law adverse to insurance companies. But Farmers' status as an insurer relates to only one of its arguments, which is that it is entitled to invoke the rule of *contra proferentum*. That rule requires that

contracts (especially insurance contracts), if ambiguous, be construed against the drafter—and hence, in a suit over an insurance policy, against the insurer. E.g., *Gillen v. State Farm Mutual Automobile Ins. Co.*, 830 N.E.2d 575, 581-84 (Ill. 2005); *Bucci v. Essex Ins. Co.*, 393 F.3d 285, 290 (1st Cir. 2005); *Eagle Leasing Corp. v. Hartford Fire Ins. Co.*, 540 F.2d 1257, 1260-62 (5th Cir. 1976); *Lytle v. Freedom Int'l Carrier, S.A.*, 519 F.2d 129, 135 (6th Cir. 1975). Partly because insurance contracts tend to be products of negotiation among insurance companies, *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, 607 N.E.2d 1204, 1218-19 (Ill. 1992); see also *Eljer Mfg. Inc. v. Liberty Mutual Ins. Co.*, 972 F.2d 805, 810 (7th Cir. 1992) (Illinois law); *Morton Int'l, Inc. v. General Accident Ins. Co*, 629 A.2d 831, 849-50 (N.J. 1993), and partly because the companies, being averse to uncertainty (they are insurance companies, after all), are reluctant to alter policy language once its meaning has been settled by judicial decision, *Continental Casualty Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297, 299 (7th Cir. 1990); Michael B. Rappaport, "The Ambiguity Rule and Insurance Law: Why Insurance Contracts Should Not Be Construed Against the Drafter," 30 *Ga. L. Rev.* 171, 211 (1995), the language of insurance policies is often imprecise (like other products of multiparty compromise) and esoteric, and courts are reluctant to require the hapless insured to unravel its mysteries.

The argument for *contra proferentum* is pretty feeble when the policyholder is a sophisticated commercial enterprise rather than an individual consumer, see, e.g., *F.S. Smithers & Co. v. Federal Ins. Co.*, 631 F.2d 1364, 1368 (9th Cir. 1980); *Eagle Leasing Corp. v. Hartford Fire Ins. Co.*, 540 F.2d 1257, 1260-61 (5th Cir. 1976); see generally *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 858-59

(7th Cir. 2002)—especially when it is another insurance company. *Employers Reinsurance Corp. v. Mid-Continent Casualty Co.*, 358 F.3d 757, 767 (10th Cir. 2004); *United States Fire Ins. Co. v. General Reinsurance Corp.*, 949 F.2d 569, 573-74 (2d Cir. 1991). Nevertheless, some states don't limit *contra proferentum* to policies sold to commercially unsophisticated individuals. Illinois is one of them, reasoning that "any insured, whether large and sophisticated or not, must enter into a contract with the insurer which is written according to the insurer's pleasure by the insurer. Generally, since little or no negotiation occurs in this process, the insurer has total control of the terms and the drafting of the contract." *Outboard Marine Corp. v. Liberty Mutual Ins. Co., supra*, 607 N.E.2d at 1219; see also *Minnesota School Boards Ass'n Ins. Trust v. Employers Ins.*, 331 F.3d 579, 581-82 (8th Cir. 2003) (Minnesota law); *Empire Fire & Marine Ins. Co. v. Liberty Mutual Ins. Co.*, 699 A.2d 482, 494 (Md. App. 1997). "[T]otal control" is an exaggeration; the insured cannot be forced to accept the contract drafted by the insurance company. But no matter; we must bow to the rule adopted by the Supreme Court of Illinois to guide the interpretation of contracts governed, as this one is, by Illinois law. The rule presumably is limited by its logic, and hence to cases in which there is no negotiation over the terms of the insurance contract. See *Benjamin Moore & Co. v. Aetna Casualty & Surety Co.*, 843 A.2d 1094, 1103-04 (N.J. 2004); *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1264-66 (Cal. 1990). But so far as appears there was none here.

This is not to buy Farmers' contention that the word "similar" is so hopelessly vague that it cannot be given *any* effect in an insurance-policy exclusion. The contention is astonishing because of its implications for Farmers' use of

the word in exclusions in its own policies, see, e.g., *Schomas v. Farmers Automobile Ins. Ass'n*, 302 N.E.2d 196, 198 (Ill. App. 1973), and in any event unsound because of its neglect of context. Standing alone, the word "similar" partakes of the vagueness of other verbal signifiers of matters of degree, such as "substantial," "significant," and "probable." But context can give it a precise meaning, as this case illustrates.

The Fair Labor Standards Act requires employers engaged in interstate commerce to pay their hourly-wage employees time and a half for any time they work in excess of 40 hours a week. The Illinois Minimum Wage Law imposes the identical requirement except that it is not limited to employers who operate in interstate commerce, though it is of course limited to Illinois workers. The difference in scope, being unrelated to the purpose of the exclusion from coverage of violations of laws similar to the FLSA, doesn't bear on the question of similarity. The purpose of the exclusion is equally applicable to both statutes. It is to avoid "moral hazard," which, in its most extreme form, is the temptation of an insured to precipitate the event insured against if the insurance goes beyond merely replacing a loss. "It's why an insurer will not insure your house against fire for more than it's worth," *Moran Foods, Inc. v. Mid-Atlantic Market Development Co.*, 476 F.3d 436, 439 (7th Cir. 2007); see also *Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 499 (6th Cir. 2005), and why liability-insurance policies are presumed not to insure against breaches of contract. *Krueger Int'l, Inc. v. Royal Indemnity Co.*, *supra*. Insurance against a violation of an overtime law, whether federal or state, would enable the employer to refuse to pay overtime and then invoke coverage so that the cost of the overtime

would come to rest on to the insurance company. The employer would have violated the overtime law with impunity, unjustly enriching itself by the difference between the overtime wage for the hours in question and the straight wage. No insurance company would knowingly write a policy that would enable the insured to trigger coverage any time it wanted a windfall.

Farmers cites us to Illinois cases which say that words left undefined in an insurance policy should be interpreted with reference to the average person's understanding. *Gillen v. State Farm Mutual Auto Ins. Co.*, *supra*, 830 N.E.2d at 582-84; *Outboard Marine Corp. v. Liberty Mutual Ins. Co.*, *supra*, 607 N.E.2d at 1215-16. But that is a blind guide in the present case because the average person has no understanding of the exclusion of claims based on the Fair Labor Standards Act and similar statutes. The language is not addressed to the average person, but to employers, and they know what the Fair Labor Standards Act is, know there are state counterparts, and could not think they'd bought insurance that would enable them to disregard the state overtime provisions. The interpretation of a document is relative to the understanding of the intended readership, *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275-76 (2d Cir. 2000); see also *Southwestern Bell Telephone Co. v. Public Utility Commission*, 208 F.3d 475, 486 (5th Cir. 2000), not to the average Joe. It is no more relevant that he would not understand the exclusion of claims based on the Fair Labor Standards Act and similar statutes than that someone ignorant of the English language wouldn't understand it either.

Farmers argues alternatively that the "similar" clause must be struck from the policy because it makes the policy illusory. Given the word's vagueness, there is a reading of

"similar" that would have that effect. The Fair Labor Standards Act, the National Labor Relations Act, and the other statutes mentioned by name in the exclusion are all about the rights of employees, and so there is a sense in which laws that forbid wrongful dismissal, discrimination, retaliation, and other "employment wrongful acts" are similar because those laws also confer rights on employees. But an interpretation of "similar" that nullified the policy would be as silly as an interpretation that nullified the "similar" exclusion. Any exclusion narrows coverage; that is its purpose. To narrow coverage is not to make coverage illusory. St. Paul does not argue that "similar" should be understood so broadly as to have that effect. Nor must it be so understood in order that the judgment in St. Paul's favor be

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*