# Illinois Official Reports

## Appellate Court

---

**Doctors Direct Insurance, Inc. v. Bochenek, 2015 IL App (1st) 142919**

---

| | |
|---|---|
| Appellate Court Caption | DOCTORS DIRECT INSURANCE, INC., Plaintiff-Appellee, v. DAVID BOCHENEK, Defendant-Appellant (Beaute'E'mergente, LLC, Doing Business as McAdoo Cosmetic Surgery, Defendant). |
| District & No. | First District, First Division<br>Docket No. 1-14-2919 |
| Filed | August 3, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-26258; the Hon. Franklin Ulyses Valderrama, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, and Rebecca A. Cohen, all of Edelman, Combs, Latturner & Goodwin, LLC, of Chicago, for appellant.<br><br>Charles A. Valente and William D. Nagel, both of Krasnow Saunders Kaplan & Beninati, LLP, of Chicago, for appellee. |

Panel

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1 Defendant, David Bochenek (Bochenek), appeals from an order of the circuit court that granted the motion of plaintiff, Doctors Direct Insurance, Inc. (Doctors Direct), for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2012)). The circuit court found that Doctors Direct did not have a duty to defend or indemnify defendant Beaute'E'mergente, LLC, doing business as McAdoo Cosmetic Surgery (McAdoo), in a federal class action lawsuit filed by Bochenek. On appeal, Bochenek contends that McAdoo's insurance policy with Doctors Direct covers the claims in Bochenek's federal lawsuit. We affirm.

¶ 2 This matter involves two federal complaints apparently filed by Bochenek–an original complaint and a first amended complaint. The two complaints are nearly the same, but the first amended complaint added an allegation that will be noted below. In his original federal complaint, in which McAdoo and others who are not parties to this appeal were named as defendants, Bochenek alleged that in September and October 2013, he received unsolicited text messages on his cellular phone. The text messages read as follows:

> "50% off Rockford area Botox,
> now $7/unit. Call within 4
> weeks (815) 397-3373 McAdoo
> Cosmetic Surgery Reply STOP to opt-out.
>
> 25% off filler, Juvederm now
> $450/syringe when you schedule
> in the next 4
> weeks. 815 397-3373 McAdoo
> Cosmetic Surgery Reply STOP to
> opt-out.
>
> McAdoo Cosmetic Surgery
> 815-397-3373:
> Please reply VIP to receive inside
> privileged offers: Botox, fillers,
> product, etc. Reply STOP to opt-
> out."

¶ 3    Bochenek further alleged in his original federal complaint that McAdoo was "responsible for making or causing the making of the text message calls," Bochenek had not authorized the calls, and Bochenek had not provided McAdoo with his cellular phone number. According to Bochenek, the text messages came from an email address associated with SolutionReach, which was "engaged in the business of marketing and selling electronic communication solutions to healthcare practices." Bochenek stated that on information and belief, the text messages were part of a "mass broadcasting."

¶ 4    In his original federal complaint, Bochenek asserted that defendants violated the Telephone Consumer Protection Act (47 U.S.C. § 227 (2012)). In addition, Bochenek alleged that defendants "engaged in unfair acts and practices" that violated section 2 of the Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/2 (West 2012)). According to Bochenek, the text message calls were contrary to Illinois public policy and public policy as established by the Telephone Consumer Protection Act.

¶ 5    McAdoo had medical professional liability insurance coverage with Doctors Direct. The policy included a cyber claims endorsement, which stated:

"Subject to all terms, conditions, definitions and exclusions of the Policy, **we** agree to reimburse protected parties, up to the applicable limit indicated in this endorsement, for costs protected parties become legally obligated to pay as a result of a **Cyber Claim** for any **Network Security Wrongful Act** or **Privacy Wrongful Act** including **Patient Notification Costs** and **Credit Monitoring Costs** incurred for any **Privacy Wrongful Act** and for **Data Recovery Costs** incurred due to a **Data Interference Act**, including **Defense Costs** of a **Government Investigation** for a **Privacy Wrongful Act**." (Emphases in original.)

¶ 6    The endorsement defined a cyber claim as:

"a demand for money or services as compensation, such as a claim letter, notice of attorney's lien, or a civil suit, administrative proceeding, arbitration or mediation seeking to compel such compensation in which protected parties must participate."

Additionally, a privacy wrongful act was defined as:

"any breach or violation of U.S. federal, state, or local statutes and regulations associated with the control and use of personally identifiable financial, credit or medical information, whether actual or alleged, but only if committed or allegedly committed by protected parties."

¶ 7    On October 30, 2013, McAdoo notified Doctors Direct of the federal lawsuit and asserted that Bochenek's allegations triggered Doctors Direct's obligation to defend and indemnify McAdoo. McAdoo further stated that coverage was triggered by the cyber claims endorsement and the definition of a privacy wrongful act.

¶ 8    On November 22, 2013, Doctors Direct filed a complaint for declaratory relief in the Cook County circuit court. Doctors Direct contended that the policy did not cover McAdoo for the claims raised in the federal lawsuit and, moreover, the federal complaint failed to allege a privacy wrongful act under the policy. Doctors Direct sought a declaration that it did not have to provide a defense to McAdoo in the federal lawsuit or indemnify McAdoo for any damages awarded.

¶ 9    On January 14, 2014, McAdoo filed a petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. Ultimately, the bankruptcy court

limited Bochenek's recovery against McAdoo to the proceeds of Doctors Direct's insurance policy.

¶ 10    On March 28, 2014, Bochenek filed his answer to Doctors Direct's complaint, stating that his lawsuit constituted a privacy wrongful act under the cyber claims endorsement of the Doctors Direct policy.

¶ 11    On April 4, 2014, Doctors Direct filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2012)). Doctors Direct contended that Bochenek's claims under the Telephone Consumer Protection Act (47 U.S.C. § 227 (2012)) and Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2012)) were not based on a privacy wrongful act because neither statute was applied or associated with the control and use of personally identifiable financial, credit, or medical information. Doctors Direct asserted that as a result, the court should enter a judgment declaring that Bochenek's federal lawsuit was not covered under the policy.

¶ 12    In his response, Bochenek asserted that the Doctors Direct policy covered McAdoo for the federal lawsuit because the conduct complained of involved the control and use of personally identifiable financial, credit, and medical information. Bochenek asserted that the Doctors Direct policy was ambiguous as to whether the " 'breach or violation' " of the " 'U.S. federal, state or local statutes and regulations' " must be associated with the control and use of personally identifiable financial, credit, or medical information. Regardless, Bochenek stated that both the particular conduct at issue and the laws violated were associated with the control and use of personally identifiable financial, credit, or medical information, and that any ambiguity must be resolved in favor of coverage. Additionally, Bochenek asserted that discovery had revealed that McAdoo had acquired customer information, including names and cellular phone numbers, from the owner of a spa. Bochenek contended that "[b]eing identified as someone who might consume cosmetic surgery is as stigmatizing as being identified as part of a group that would participate in, for example, psychotherapy" and that McAdoo's actions implicated privacy concerns. Bochenek further asserted that a list of people "believed to be prospects for medical procedures and their cell phone numbers" was " 'personally identifiable financial, credit or medical information.' "

¶ 13    In its reply, Doctors Direct asserted that Bochenek had construed the definition of a privacy wrongful act in a way that was at odds with plain, ordinary English. Additionally, Doctors Direct contended that neither the Telephone Consumer Protection Act nor the Consumer Fraud Act were concerned with the secrecy of personally identifiable financial, credit, or medical information. Doctors Direct also stated that the court could disregard Bochenek's reference to information learned from discovery because discovery was irrelevant on a motion for judgment on the pleadings and even if it was relevant, Bochenek had not presented the supposed discovery responses to the court.

¶ 14    Subsequently, in June 2014, Bochenek filed a motion for leave to file a surreply, noting Doctors Direct's claims that the court could not consider discovery in the federal case and that Bochenek's federal complaint did not allege any violation or breach associated with the control and use of personally identifiable financial, credit, or medical information. Bochenek stated that he had filed a motion for leave to file an amended complaint in federal court, and that this amended complaint added allegations that McAdoo "obtained a list of personally

identifiable financial, credit or medical information of customers of a spa without their consent and used that information to send spam text messages to them."

¶ 15    On June 23, 2014, the court denied Bochenek's motion for leave to file a surreply.

¶ 16    The record reflects that on June 30, 2014, Bochenek filed a notice of filing and a copy of a first amended federal complaint (amended complaint). The notice of filing is date-stamped by the Cook County clerk's office. The amended complaint added an allegation that McAdoo "obtained a list of personally identifiable financial, credit or medical information of customers from a spa–including their names and telephone numbers–without the customers' consent and used that personally identifiable information to send advertising text messages to those customers believing they would be likely to purchase cosmetic surgery products."

¶ 17    On September 15, 2014, the court issued a memorandum opinion and order that granted Doctors Direct's motion for judgment on the pleadings. The court acknowledged that Bochenek had filed an amended complaint on June 30, 2014, but stated that "neither party asserts that the amendment in the Bochenek Lawsuit affects [Doctors Direct's] Motion for Judgment on the Pleadings." Construing the insurance policy, the court stated in its order that under a plain reading of the privacy wrongful act provision, the phrase " 'associated with the control and use of personally identifiable financial, credit, or medical information' " qualified the phrase immediately preceding it, " 'of U.S. federal, state or local statute or regulation.' "

¶ 18    The court's order also addressed whether Doctors Direct had to cover Bochenek's claim under the Telephone Consumer Protection Act and stated that the Telephone Consumer Protection Act was intended to protect consumers from certain forms of undesirable communication. The court found that nothing in the plain language of the statute indicated an intent to protect against the compilation of consumers' names and phone numbers for use in telemarketing. The court stated that because "the statute does not regulate actions that may be taken to prepare for the placement of these automated phone calls," the Telephone Consumer Protection Act was not " 'associated with the control and use of personally identifiable financial, credit, or medical information.' "

¶ 19    The court also found that even if it accepted Bochenek's interpretation that the Telephone Consumer Protection Act was associated with the control and use of personally identifiable financial, credit, or medical information, Bochenek had nonetheless failed to establish "that the collection of names and telephone numbers implicates the control and use of personally identifiable financial, credit, or medical information." Based on its review of federal regulations referenced by Bochenek, the court disagreed with Bochenek's assertion that a list of prospective customers for cosmetic surgery services constituted personally identifiable financial information.

¶ 20    The court further stated in its order that the Doctors Direct policy did not cover violations of the Consumer Fraud Act. The court found there was nothing in the plain language of the Consumer Fraud Act to indicate that the statute intended to protect against the disclosure of personally identifiable financial, credit, or medical information. The court added that "[t]o the extent that the [Consumer Fraud Act] does prohibit the violation of other state statutes that are associated with the control and use of personally identifiable financial, credit, or medical information," that provision was irrelevant because Bochenek's federal lawsuit did not allege a violation of those other state statutes. The court found overall that Doctors Direct had no duty to defend or indemnify McAdoo and dismissed the matter in its entirety.

¶ 21    On appeal, Bochenek contends that his federal claim under the Telephone Consumer Protection Act alleged a privacy wrongful act under the Doctors Direct policy. According to Bochenek, the phrase "associated with" is expansive, and both the conduct at issue and the statutes and regulations prohibiting the conduct are necessarily associated with the control and use of personally identifiable financial, credit, or medical information. Bochenek also asserts that the policy language for a privacy wrongful act is ambiguous, and therefore should be construed against Doctors Direct. Additionally, Bochenek argues that the Doctors Direct policy does not require that a statute or regulation expressly state an intent to regulate the control and use of personally identifiable financial, credit, or medical information. Bochenek further contends that the Telephone Consumer Protection Act as a whole regulates telemarketing lists, and that the statute and its corresponding Federal Communications Commission (FCC) regulations regulate actions that may be taken to prepare for placing automated phone calls.

¶ 22    As noted above, this appeal concerns a motion for judgment on the pleadings. According to section 2-615(e) of the Code, "[a]ny party may seasonably move for judgment on the pleadings." 735 ILCS 5/2-615(e) (West 2012). Judgment on the pleadings is proper "where the pleadings disclose no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). A motion for judgment on the pleadings tests the sufficiency of the pleadings by determining whether the plaintiff is entitled to the relief sought by its complaint, or in the alternative, whether the defendant by his answer has "set up a defense that would entitle him to a hearing on the merits." *Continental Casualty Co. v. Cuda*, 306 Ill. App. 3d 340, 346 (1999). A party who moves for judgment on the pleadings concedes the truth of the well-pled facts in the respondent's pleadings. *Parkway Bank & Trust Co. v. Meseljevic*, 406 Ill. App. 3d 435, 442 (2010). In ruling on a motion for judgment on the pleadings, the court considers only the facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Gillen*, 215 Ill. 2d at 385. "[I]f the pleadings put in issue one or more material facts, evidence must be taken to resolve such issues and judgment may not be entered on the pleadings." (Internal quotation marks omitted.) *Continental Casualty Co.*, 306 Ill. App. 3d at 347. On review, we determine whether any issues of material fact exist, and if not, whether the movant was entitled to judgment as a matter of law. *Gillen*, 215 Ill. 2d at 385. We review a circuit court's order granting judgment on the pleadings *de novo*. *Parkway Bank & Trust Co.*, 406 Ill. App. 3d at 442.

¶ 23    Our analysis below considers both Bochenek's original and amended federal complaints. It is unclear from the record whether the circuit court considered the amended complaint in making its ruling, having stated in its order that "neither party asserts that the amendment in the Bochenek Lawsuit affects [Doctors Direct's] Motion for Judgment on the Pleadings." The record does not contain a report of proceedings for the date on which the court heard arguments on Doctors Direct's motion for judgment on the pleadings. Further, the record does not indicate whether Bochenek's original federal complaint or amended complaint was pending before the federal court. Given this uncertainty, we consider both complaints.

¶ 24    To determine whether the Doctors Direct policy covers the federal lawsuit, we must first construe the definition of a privacy wrongful act in the insurance policy. As noted above, the policy defines a privacy wrongful act as:

"any breach or violation of U.S. federal, state or local statutes and regulations associated with the control and use of personally identifiable financial, credit or medical information, whether actual or alleged, but only if committed or allegedly committed by protected parties."

¶ 25    The rules that apply to contract interpretation govern the interpretation of an insurance policy. *Gaudina v. State Farm Mutual Automobile Insurance Co.*, 2014 IL App (1st) 131264, ¶ 17. When construing an insurance policy, our primary objective is to ascertain and give effect to the parties' intent, as expressed in the policy language. *Gillen*, 215 Ill. 2d at 393. Further, we should give a natural and reasonable construction to an insurance policy. *Id.* "If the terms in the policy are clear and unambiguous, the court must give them their plain, ordinary, [and] popular meaning." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 119 (1992). A term is ambiguous, and construed against the drafter of the policy, if it is subject to more than one reasonable interpretation within the context in which it appears. *Id*. To determine whether the insurer has a duty to defend, a court must compare the allegations in the underlying complaint to the policy language. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154-55 (2005). If the underlying complaint alleges facts within or potentially within policy coverage, the insurer must defend the insured even if the allegations are groundless, false, or fraudulent. *Id*. at 155.

¶ 26    Turning to the definition of a privacy wrongful act, the parties' disagreement concerns the definition of the phrase "associated with" and what that phrase modifies. Under our reading of the definition's plain language, it is the U.S. federal, state, or local statute or regulation that must be associated with the control and use of personally identifiable financial, credit, or medical information. Though Bochenek questions its applicability, the parties note the last antecedent rule, in which a qualifying phrase is confined to the last antecedent unless there is something in the instrument that requires a different construction. *Illini Federal Savings & Loan Ass'n v. Elsah Hills Corp.*, 112 Ill. App. 3d 356, 359 (1983). As here, "[w]here the text of the statute is clear and unambiguous, there is no need to resort to canons of statutory construction such as the last-antecedent rule." (Internal quotation marks omitted.) *Department of Transportation v. Singh*, 393 Ill. App. 3d 458, 465 (2009). However, using the last antecedent rule here helps illustrate the proper construction of the definition of a privacy wrongful act. The phrase immediately preceding "associated with" is "U.S. federal, state or local statutes or regulations." As such, "associated with" only applies to "U.S. federal, state or local statutes or regulations," and not to "any breach or violation." The last antecedent rule underscores that it is the statute or regulation that must be associated with personally identifiable financial, credit, or medical information.

¶ 27    Our next task is to define "associated with," which will clarify the required relationship between "U.S. federal, state or local statutes and regulations" and "control and use of personally identifiable financial, credit or medical information." Where a term in an insurance policy is not defined, we afford that term its plain, ordinary, and popular meaning–that is, we look to its dictionary definition. *Gaudina*, 2014 IL App (1st) 131264, ¶ 18. "Associate" is defined as "to join (things) together or connect (one thing) with another: COMBINE," "to join or connect in any of various intangible or unspecified ways (as in general mental, legendary, or historical relationship, in unspecified causal relationship, or in unspecified professional or scholarly relationship)," and "to combine or join with another or

others as component parts: UNITE." Webster's Third New International Dictionary 132 (1993).

¶ 28 The Telephone Consumer Protection Act is not joined, combined, united, or connected with the control and use of personally identifiable financial, credit, or medical information. The Telephone Consumer Protection Act outlaws four practices: (1) making a call using an automated dialing system or artificial or prerecorded voice, without the prior express consent of the called party, to any emergency telephone line, guest or patient room of a hospital, health care facility, elderly home, or similar establishment, or to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, other radio common carrier service, or any service for which the called party is charged for the call; (2) initiating any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without prior express consent; (3) using a fax machine, computer, or other device to send unsolicited advertisements to a fax machine, subject to certain exceptions; (4) using an automatic telephone dialing system such that two or more telephone lines of a multi-line business are engaged at the same time. 47 U.S.C. § 227(b)(1)(A) to (D) (2012); *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 28. Of note, a "call" includes both voice calls and text messages. *Scatterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954-55 (9th Cir. 2009); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010).

¶ 29 The plain language of the Telephone Consumer Protection Act illustrates that the statute only prohibits the actual making of certain kinds of calls. The statute does not address how a caller might control or use personally identifiable financial, credit, or medical information either before or after the call is made. Although other tools of statutory construction are unnecessary when the meaning of a statute is plain on its face (*General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 180 (2011)), we note that Congress enacted the Telephone Consumer Protection Act to address telemarketing abuses related to the use of automated telephone calls to telephones, cellular telephones, and fax machines, and that the purposes of this statute are to "protect the privacy interests of residential telephone customers by restricting unsolicited automated telephone calls to the home, and facilitat[e] interstate commerce by restricting certain uses of fax machines and automatic dialers" (*Standard Mutual Insurance Co.*, 2013 IL 114617, ¶ 27). Congress also found that unrestricted telemarketing could be an intrusive invasion of privacy and that automated or prerecorded telephone calls to private residences were regarded by recipients as an invasion of privacy. *Mims v. Arrow Financial Services, LLC*, 565 U.S. ___, ___, 132 S. Ct. 740, 745 (2012). Along with the plain language of the statute, these purposes illustrate that the Telephone Consumer Protection Act focuses on the calls themselves, and is not joined, combined, united, or connected to the control and use of personally identifiable financial, credit, or medical information to make the calls.

¶ 30 We are not persuaded by Bochenek's contention that, based on provisions in the Telephone Consumer Protection Act and certain FCC regulations, the statute and regulations address the manner in which people are selected for marketing. Specifically, Bochenek points to three regulations: (1) no person or entity may initiate a telephone solicitation to someone who has put his telephone number on the national do-not-call list (47 C.F.R. § 64.1200(c)(2) (2012)); (2) no person or entity may call a residential subscriber for telemarketing purposes unless that person or entity has its own do-not-call list (47 C.F.R. § 64.1200(d) (2012)); and

(3) no person or entity may use any technology to dial a telephone number to determine whether the line is a fax or voice line (47 C.F.R. § 64.1200(a)(8) (2012)). None of these regulations are connected with the control or use of personally identifiable financial, credit, or medical information. The first two regulations require telemarketers to ascribe to or maintain systems that allow people to stop receiving calls, and the third regulation prohibits another kind of call. These regulations, like the rest of the Telephone Consumer Protection Act, are focused on the act of making calls and are not connected to the use of personally identifiable financial, credit, or medical information in service of the calls.

¶ 31       As noted above, a court must compare the allegations in the underlying complaint to the policy language to determine whether the insurer has a duty to defend. *General Agents Insurance Co. of America*, 215 Ill. 2d at 154-55. Here, Bochenek's complaints alleged a violation of the Telephone Consumer Protection Act, but because this statute is not associated with the control and use of personally identifiable financial, credit or medical information, the allegation is not covered by the Doctors Direct policy as a privacy wrongful act. As a result, the Doctors Direct policy does not cover this part of Bochenek's claim.

¶ 32       Bochenek next contends that the Doctors Direct policy covers his claim under the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2012)). Bochenek argues that the Consumer Fraud Act prohibits conduct that violates public policy as established by other state and federal statutes, including the Telephone Consumer Protection Act. Bochenek contends that, accordingly, the same analysis applies to coverage under both the Telephone Consumer Protection Act and the Consumer Fraud Act. Bochenek also notes that the Consumer Fraud Act states that violating certain other state statutes is a violation of the Consumer Fraud Act, and the list of these statutes indicates that the General Assembly thought that protecting consumers against improper telemarketing was a matter of concern and was covered by the Consumer Fraud Act.

¶ 33       Similar to our analysis of Bochenek's claim under the Telephone Consumer Protection Act, we must determine whether the Consumer Fraud Act is associated with the control and use of personally identifiable financial, credit, or medical information. Section 2 of the Consumer Fraud Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including *** the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact" with the intent that someone rely on that concealment, suppression, or omission. 815 ILCS 505/2 (West 2012). In addition, section 2Z of the Consumer Fraud Act provides that a knowing violation of certain other statutes, including the Automatic Telephone Dialers Act (815 ILCS 305/1 *et seq.* (West 2012)), the Telephone Solicitations Act (815 ILCS 413/1 *et seq.* (West 2012)), the Electronic Mail Act (815 ILCS 511/1 *et seq.* (West 2012)), the Internet Caller Identification Act (815 ILCS 517/1 *et seq.* (West 2012)), and the Personal Information Protection Act (815 ILCS 530/1 *et seq.* (West 2012)), are also violations of the Consumer Fraud Act. 815 ILCS 505/2Z (West 2012).

¶ 34       Under the Consumer Fraud Act, a party may recover for unfair as well as deceptive conduct. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). In determining whether a course of conduct or act is unfair, the Consumer Fraud Act "mandates that consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Internal quotation marks omitted.) *Id.* (quoting 815 ILCS 505/2 (West 1992)). In *Federal Trade*

*Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972), the United States Supreme Court cited with approval the factors that the Federal Trade Commission considers in determining whether a practice is unfair: (1) whether it offends public policy "as it has been established by statutes, the common law, or otherwise–whether, in other words, it is within at least the penumbra of some common-law, statutory, or otherwise established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." (Internal quotation marks omitted.) See also *Robinson*, 201 Ill. 2d at 417-18. Not all three criteria need to be satisfied for a practice to be found unfair. *Id*. at 418.

¶ 35    We agree with the circuit court that nothing in the plain language of the Consumer Fraud Act itself suggests that the statute is associated with personally identifiable financial, credit, or medical information. Bochenek also relies on a number of federal cases to contend that the Telephone Consumer Protection Act is one of the statutes that establishes practices offensive to public policy, and therefore the Consumer Fraud Act and the Telephone Consumer Protection Act share a purpose. This assertion does not help Bochenek because, as discussed above, the Telephone Consumer Protection Act is not associated with the control and use of personally identifiable financial, credit, or medical information. Therefore, a claim under the Consumer Fraud Act that in turn relies on the Telephone Consumer Protection Act is not covered under the Doctors Direct policy.

¶ 36    Another potential source for answering the question of whether the Consumer Fraud Act is associated with the control and use of personally identifiable financial, credit, or medical information is Bochenek's reference to the other state statutes listed in section 2Z of the Consumer Fraud Act (815 ILCS 505/2Z (West 2012)) that, if violated, are also violations of the Consumer Fraud Act. We find that four of the statutes Bochenek lists suffer from the same problem as the Telephone Consumer Protection Act–they focus on the act of calling or reaching someone, as opposed to the control or use of personally identifiable financial, credit, or medical information. See the Automatic Telephone Dialers Act (815 ILCS 305/15, 30 (West 2012) (prohibiting the use of an autodialer to place a telephone call between 9 p.m. and 9 a.m. and to play a prerecorded message placed by an autodialer without the consent of the third party)); the Telephone Solicitations Act (815 ILCS 413/15 (West 2012) (prohibiting the solicitation of goods or services by placing a telephone call between 9 p.m. and 8 a.m.)); the Electronic Mail Act (815 ILCS 511/10 (West 2012) (prohibiting the sending of unsolicited electronic mail advertisements that use a third party's Internet domain name without permission, otherwise misrepresent information in identifying an advertisement's origin or transmission path, or contain false or misleading information in the subject line)); the Internet Caller Identification Act (815 ILCS 517/10 (West 2012) (prohibiting the use of any Internet caller identification equipment or Internet phone equipment to make a particular number or name appear on the recipient's caller identification system)).

¶ 37    We separately consider a different statute mentioned in section 2Z and noted by Bochenek–the Personal Information Protection Act (815 ILCS 530/1 *et seq.* (West 2012)). This statute requires entities, including privately and publicly held corporations and retail operators, that for any purpose, handle, collect, disseminate, or otherwise deal with nonpublic personal information to take certain steps in the event of a breach of the security of system data. 815 ILCS 530/5, 10 (West 2012). The statute defines "personal information" as someone's first name or first initial and last name in combination with any one or more of the

following: (1) social security number; (2) driver's license number or state identification card number; and (3) account number or debit card number, or an account number or credit card number in combination with any required security code, access code, or password that would permit access to an individual's financial account. 815 ILCS 530/5 (West 2012).

¶ 38    Despite the definition of "personal information" above, and that a violation of the Personal Information Protection Act is a violation of the Consumer Fraud Act under section 2Z (815 ILCS 505/2Z (West 2012)), the Consumer Fraud Act is not associated with personally identifiable financial, credit, or medical information in this case. Again comparing the allegations of the underlying complaint to the policy language (*Outboard Marine Corp.*, 154 Ill. 2d at 125), Bochenek made no mention of the Personal Information Protection Act in either of his federal complaints. The federal complaints also do not mention the kind of information in the Personal Information Protection Act that could be personally identifiable financial or credit information under the Doctors Direct policy. As a result, he has not alleged a claim under the Consumer Fraud Act that would be covered under the Doctors Direct policy.

¶ 39    Lastly, Bochenek challenges the circuit court's alternative holding that he failed to establish "that the collection of names and telephone numbers implicates the control and use of personally identifiable financial, credit, or medical information." Bochenek argues that being placed on a list of prospects for cosmetic surgery services conveys medical information about the people on the list, as well as financial information, since the services are costly.

¶ 40    As a preliminary matter, Doctors Direct asserts that Bochenek waived the argument that a list of prospects could be personally identifiable medical information. We disagree. In his response to Doctors Direct's motion for judgment on the pleadings, Bochenek stated that the text messages associated a list of consumers and cellular telephone numbers with a "perceived need and ability to pay for cosmetic surgery products." Bochenek further asserted in his response that "[b]eing identified as someone who might consume cosmetic surgery is as stigmatizing as being identified as part of a group that would participate in, for example, psychotherapy." Bochenek also stated that "[a] list of persons believed to be prospects for medical procedures and their cell phone numbers is 'personally identifiable financial, credit, or medical information.' " Later in his response, Bochenek again stated that "[a] list of persons who have been identified as prospects for costly Botox injections or cosmetic surgery services is 'personally identifiable financial, credit or medical information.' " We find that Bochenek's references to cosmetic surgery and medical information in his response to Doctors Direct's motion for judgment on the pleadings were sufficient to preserve the argument that the list was personally identifiable medical information.

¶ 41    Moving to the merits of the question of whether the list here was "personally identifiable financial, credit, or medical information," we first consider the allegations contained in Bochenek's original federal complaint. In support of his argument, Bochenek relies primarily on *Trans Union Corp. v. Federal Trade Comm'n*, 245 F.3d 809 (D.C. Cir. 2001). At issue in *Trans Union* was whether target marketing products, which consisted of lists of names and addresses of people who met specific criteria, such as possession of a car loan, a department store credit card, or two or more mortgages, were consumer reports. *Id.* at 812. "Consumer reports" were defined as:

> "[a]ny written, oral, or other communication of any information by a consumer
> reporting agency bearing on a consumer's credit worthiness, credit standing, credit

capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for–

> (A) credit or insurance to be used primarily for personal, family, or household purposes;

> (B) employment purposes; or

> (C) any other purpose authorized under section 1681b of [the Fair Credit Reporting Act]." *Id.*

¶ 42 Bochenek contends that because the target marketing products in *Trans Union* were consumer reports (*id.* at 815), a list of people who have engaged in some past transaction that resulted in their being considered likely candidates for plastic surgery services meets the broader standard of "personally identifiable financial, credit, or medical information." We fail to see the analogy here. *Trans Union* dealt with an entirely different kind of list than the one at issue here and, moreover, was entirely irrelevant to the topic of personally identifiable medical information. Bochenek also cites to *Trans Union*'s statement that "[a]lthough target marketing lists contain only names and addresses, purchasers know that every person on a list has the characteristics they requested because Trans Union uses those characteristics as criteria for culling individual files from its database." *Id*. at 812. Here, however, there was no information in the original federal complaint about how the telephone numbers were compiled–only that McAdoo sent unsolicited text messages about cosmetic surgery products. Bochenek further states that the fact that a medical practitioner compiles a list of people who meet certain criteria identified by the practitioner to make them likely prospects for treatment makes the list contain personally identifiable medical information. However, this definition of personally identifiable medical information is too broad and could turn any list of names and phone numbers into personally identifiable medical information as long as a doctor had the list.

¶ 43 We next address whether the additional allegation in Bochenek's amended complaint that the fact that the list came from a spa made it personally identifiable medical information.[1] As noted above, Bochenek's amended complaint added the allegation that McAdoo "obtained a list of personally identifiable financial, credit or medical information of customers from a spa–including their names and telephone numbers–without the customers' consent and used that personally identifiable information to send advertising text messages to those customers believing they would be likely to purchase cosmetic surgery products." We find that the additional allegation does not change our analysis. Bochenek has failed to provide any support for the notion that the spa was a medical provider or released medical information about its customers to McAdoo. The amended complaint states that the information from the spa "[included] *** names and telephone numbers," but does not elaborate further. As a result, Bochenek's argument still hinges on the notion that McAdoo's status as a doctor makes the list personally identifiable medical information, which as stated above, is insufficient. Regardless of whether we consider the original or amended complaint,

---

[1]Interestingly, in a motion before this court, Bochenek stated that his "contention that the list contains medical information has consistently been rooted in the fact that the list was created by a surgeon to sell a medical service. The fact that the list was obtained from a spa served merely to establish the background of the claim and was irrelevant to the medical nature of the list."

Bochenek has failed to show that the list here was personally identifiable medical information.

¶ 44    In further support of his contention that the list here was personally identifiable financial or credit information, Bochenek relies on several FCC regulations, including section 313.3(o)(1) of Title 16 (16 C.F.R. § 313.3(o)(1) (2012)), which defines "[p]ersonally identifiable financial information" as (1) information that a consumer provides to obtain a financial product or service, (2) information about a consumer resulting from any transaction involving a financial product or service, or (3) information otherwise obtained about a consumer in connection with providing a financial product or service to the consumer. "Personally identifiable financial information" includes the fact that someone has been a customer or has obtained a financial product or service. 16 C.F.R. § 313.3(o)(2)(i)(C) (2012). The problem here is that these regulations do not apply to the entities that Bochenek claims were involved in sending the text messages. The cited regulations apply to "financial institutions" and "other persons" over whom the Federal Trade Commission has enforcement authority pursuant to section 505(a)(7) of the Gramm-Leach-Bliley Act (16 C.F.R. § 313.1(b) (2012)), which Bochenek does not claim covers any entity involved here. Further, a "financial institution" is a business that engages in financial activity as described in section 4(k) of the Bank Holding Company Act of 1956 (12 U.S.C. § 1843(k) (2012)). 16 C.F.R. § 313.1(b) (2012). Subsection (k)(4) of the Bank Holding Company Act lists several financial activities, including lending money or securities, insuring against loss, issuing or selling instruments, and dealing in securities. 12 U.S.C. § 1843(k)(4) (2012). There is no evidence that McAdoo or any other entity involved in the text messages engaged in the listed financial activities and were therefore financial institutions. As a result, Bochenek's cited regulations do not apply here and Bochenek has failed to show that the list of prospective customers for cosmetic surgery services was personally identifiable financial or credit information.

¶ 45    Overall, because the allegations in Bochenek's federal complaints do not even potentially fall within the coverage of the Doctors Direct policy, Doctors Direct does not have a duty to defend or indemnify McAdoo in the federal lawsuit. See *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993) (duty to defend is broader than duty to indemnify). Accordingly, the circuit court properly granted Doctors Direct's motion for judgment on the pleadings.

¶ 46    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 47    Affirmed.