2019 IL App (2d) 180154
Nos. 2-18-0154, 2-18-0159, 2-18-0860, 2-18-0861 cons.
Opinion filed March 29, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-MR-55 |
| MARY MURPHY, as Executor of the Estate of James Hollander, Deceased; SANDRA WENDLAND; CHEYENNE FLOWERS; PAMELA SHEPPARD, as Guardian of the Estate and Person of Alyssa Guarino, a Disabled Person; KEITH KEIGHER; and J-M TRANSPORTS, INC., | ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Mary Murphy, as Executor of the Estate of James Hollander, Deceased; Sandra Wendland; Cheyenne Flowers; Pamela Sheppard, as Guardian of the Estate and Person of Alyssa Guarino, a Disabled Person; Defendants-Appellants). | ) ) ) ) ) ) ) | Honorable Robert P. Pilmer, Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendants, Mary Murphy, as executor of the estate of James Hollander, deceased; Sandra Wendland; Cheyenne Flowers; and Pamela Sheppard, as guardian of the estate and person of Alyssa Guarino, a disabled person, (collectively, defendants), appeal the trial court's

grant of summary judgment in favor of plaintiff, State Farm Mutual Automobile Insurance Company. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On September 11, 2015, a multivehicle accident occurred at the intersection of Grove Road and U.S. Route 52 in Kendall County. At the intersection, Grove Road was controlled by a stop sign and Route 52 was a through-road without any traffic signals. When the accident occurred, Hollander was driving Wendland's 2015 Nissan Altima south on Grove Road. Wendland and Guarino were passengers, with Wendland in the front passenger seat and Guarino in the backseat, and they were en route to visit Wendland's daughters in Iowa. Meanwhile, Flowers was traveling east on Route 52 near Grove Road. Keith Keigher was driving a semitractor-trailer in the scope of his employment with J-M Transport, Inc. (J-M), traveling west on Route 52 near Grove Road. The accident occurred when the Nissan collided with the tractor-trailer, which then collided with Flowers's vehicle. Hollander died as a result of the collision.

¶ 4                          A. The Underlying Complaints

¶ 5     Wendland, Sheppard, and Flowers each filed negligence actions against Hollander's estate, seeking to recover damages for injuries sustained in the accident. See Wendland v. Murphy, No. 16-L-41 (Cir. Ct. Kendall County); Sheppard v. Murphy, No. 16-L-39 (Cir. Ct. Kendall County); Flowers v. Murphy, No. 15-L-87 (Cir. Ct. Kendall County). Flowers also named as defendants Keigher and J-M. All of the underlying complaints alleged that the collision was caused by Hollander's negligent acts or omissions. None of the underlying complaints alleged that Hollander was vicariously liable for any acts or omissions by Wendland. None of the complaints alleged that Wendland was liable in any manner.

¶ 6                          B. Complaint for Declaratory Judgment

¶ 7    On July 11, 2017, plaintiff filed a declaratory judgment action, stating that it was defending Hollander's estate in the underlying lawsuits, under Wendland's primary automobile policy.  Plaintiff acknowledged that Hollander was a "permissive user" of the Nissan.  However, plaintiff sought a declaration that it did not owe an obligation to defend or indemnify Hollander's estate under a $1 million umbrella policy it had issued to Wendland that was effective at the time of the accident.

¶ 8    Plaintiff alleged and argued the following.  Plaintiff had no duty to defend or indemnify Hollander's estate under the umbrella policy "because [Hollander] does not qualify as an insured" under the umbrella policy.  The policy provided in part:

"COVERAGE L—PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of a loss for which the insured is legally liable and to which this policy applies, we will pay on behalf of the insured, the damages that exceed the retained limit.  The most we will pay for such loss is the Coverage L Limit of Liability, as shown on the declarations page, regardless of the number of insureds who may be liable, claims made, or persons injured.

* * *

DEFINITIONS

***

6. 'insured' means:

a. you and your relatives whose primary residence is your household;

b. any other human being under the age of 21 whose primary residence is your household and who is in the care of a person described in 6.a.;

c. any other person or organization to the extent they are liable for the use of an automobile, recreational motor vehicle or watercraft by a person included in 6.a. or 6.b.

\* \* \*

12. 'relative' means any person related to you by blood, adoption, or marriage.

\* \* \*

15. 'you' and 'your' mean the person or persons shown as 'Named Insured' on the declarations page. If a named insured shown on the declarations page is a human being then you and your includes the spouse of the first person listed as a named insured if the spouse resides primarily with that named insured."

¶ 9                                    C. Motion for Summary Judgment

¶ 10     On July 11, 2017, plaintiff filed a motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2016)). Plaintiff alleged and argued, in part, that Hollander did not fall within paragraph 6.c. of the umbrella policy, because he was not liable or alleged to be liable for the use of a motor vehicle by a person described in paragraph 6.a. or 6.b. Specifically, "[t]here are no allegations in the Underlying Lawsuits that Hollander [was] alleged to be liable for anyone else's use of an automobile who would fall within Paragraphs 6.a. or 6.b." According to plaintiff, these undisputed material facts established that Hollander did not fall within the definition of an "insured" under the umbrella policy, and therefore plaintiff was entitled to judgment as a matter of law.

¶ 11     Defendants filed separate responses to plaintiff's motion. All defendants argued that Hollander was an insured under paragraph 6.c. of the umbrella policy. Murphy argued that paragraph 6.c. was ambiguous because "[r]ules of grammatical construction indicate that the limiting phrase only modifies the final word before the phrase (*i.e.*, watercraft) and not the word

'automobile.' " Therefore, Murphy concluded, paragraph 6.c. could be interpreted to include Hollander because he was "any other person or organization to the extent [that he was] liable for the use of an automobile."

¶ 12 Sheppard argued that Hollander qualified as an insured under paragraph 6.c. of the umbrella policy because the undisputed facts established that the "use" of the vehicle was by Wendland to visit her daughters, as Wendland testified in her deposition. Thus, Hollander was an " 'other person *** liable for the use of an automobile *** by a person included in 6.a. [Wendland] ***.' " To the extent that plaintiff asserted that there was some other interpretation of paragraph 6.c., the language should be deemed ambiguous, which required the trial court to construe the policy in favor of the insured and against plaintiff.

¶ 13 Wendland argued that Hollander qualified as "any other person" under paragraph 6.c. As for the remainder of paragraph 6.c., the underlying lawsuits sought to hold Hollander's estate "liable for use of an automobile *** by a person included in 6.a.," namely, Wendland. The umbrella policy did not limit the term "use" to "driving" or "operation." "Use" was not defined in the policy. Thus, Wendland concluded, a reasonable interpretation of the term "use" in the context of "use of an automobile" included drivers and passengers alike, and Hollander qualified as an insured under paragraph 6.c.

¶ 14 On November 8, 2017, the trial court denied plaintiff's motion for summary judgment, determining that "the definition of insured is sufficiently ambiguous as to whether Hollander is entitled to coverage under the Umbrella Policy."

¶ 15 Plaintiff filed a motion to reconsider, arguing that the trial court erred in its application of existing law in denying plaintiff's motion for summary judgment.

¶ 16 On January 30, 2018, after hearing argument on plaintiff's motion to reconsider, the trial court reversed its original ruling, stating, in its written order:

"The court finds that its previous interpretation of the insurance policy, and specifically the definition of the term 'insured,' was incorrect; and that under the language of the policy James Hollander does not qualify as an insured under the Umbrella Policy, nor does State Farm have a duty to defend or indemnify the Estate of James Hollander."

The trial court therefore entered summary judgment in favor of plaintiff.

¶ 17   Defendants timely filed separate notices of appeal.[1]   This court consolidated these appeals.

¶ 18                         II. ANALYSIS

¶ 19                     A. Standard of Review

¶ 20   Defendants argue that the trial court erred by determining that, as a matter of law, Hollander was not an "insured" under the umbrella policy plaintiff issued to Wendland.

¶ 21   Our review of the trial court's grant of summary judgment is *de novo*. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; see 735 ILCS 5/2-1005(c) (West 2016).  A genuine issue of material fact exists when the material facts are disputed or when the material facts are undisputed but reasonable persons might draw

---

[1] On February 23, 2018, Murphy filed her notice of appeal (No. 2-18-0154).  On the same day, Sheppard filed her notice of appeal (No 2-18-0159).  On February 27, 2018, Flowers filed her notice of appeal (No. 2-18-0860).  On February 28, 2018, Wendland filed her notice of appeal (No. 2-18-0861).

different inferences from those undisputed facts. *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25. "Although summary judgment can aid in the expeditious disposition of a lawsuit, it remains a drastic means of disposing of litigation and, therefore, should be allowed only where the right of the moving party is clear and free from doubt." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 22                          B. Duty to Defend and Indemnify

¶ 23    In a declaratory judgment action such as the case at bar, where the issue is whether the insurer has a duty to defend and indemnify pursuant to an insurance policy, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provision of the insurance policy. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). An insurer's duty to defend arises when (1) the complaint is brought against an insured and (2) the facts as alleged in the complaint fall, or potentially fall, within the policy's coverage. *Pekin Insurance Co.*, 237 Ill. 2d at 455. Moreover, where an insurer has no duty to defend, the insurer has no duty to indemnify. *Id*. at 456.

¶ 24                          C. Interpretation of Insurance Policies

¶ 25    Construing the provisions of an insurance policy involves a question of law, which we review *de novo*. See *Id.* at 455; *Outboard Marine*, 154 Ill. 2d at 102. When construing an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in their insurance contract. *Pekin Insurance Co.*, 237 Ill. 2d at 455. If the words of the policy are clear and unambiguous, the court must afford them their plain and ordinary meaning. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001); *Outboard Marine,* 154 Ill. 2d at 108.

¶ 26    Where ambiguity exists, the policy will be construed strictly against the insurer, who drafted the policy, and liberally in favor of coverage for the insured. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 417 (2006). Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Creative possibilities may be suggested, but only reasonable interpretations will be sufficient to establish an ambiguity. *Id.* Thus, courts will not strain to find an ambiguity where none exists. *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497 (1999). Further, the fact that a term is not defined by the policy does not render it ambiguous. *Nicor*, 223 Ill. 2d at 417.

¶ 27    Defendants contend that Hollander was an "insured" under paragraph 6.c. of the umbrella policy because (1) Wendland was using her vehicle, as a passenger to visit her daughters, when the accident occurred and (2) applying the last-antecedent rule provides a reasonable interpretation of paragraph 6.c. or renders the term "insured" ambiguous. Plaintiff, on the other hand, asserts that Hollander was not an "insured" under the policy, because the underlying complaints do not allege that Hollander was liable for Wendland's acts or omissions.

¶ 28    Again, the umbrella policy provided:

> "If a claim is made or a suit is brought against an *insured* for damages because of a loss for which the *insured* is legally *liable* and to which this policy applies, we will pay on behalf of the *insured*, the damages that exceed the retained limit.
>
> * * *
>
> 6. '*insured*' means:
>
> a. [Wendland and]
>
> * * *

c. any other person \*\*\* to the extent they are *liable* for the use of an automobile, recreational motor vehicle or watercraft *by a person included in 6.a*. \*\*\*." (Emphases added.)

¶ 29 We determine that the umbrella policy's language is clear and unambiguous. For coverage to exist, a claim must be brought against an "insured" for damages for which the insured is "liable." Although Hollander's estate was named as a defendant in the underlying complaints, Hollander was not an insured under the policy. Further, none of the underlying complaints alleged that Hollander was liable for *Wendland's* use of the Nissan. The underlying complaints alleged that Hollander was negligent in *his* use and operation of the Nissan. To be clear, no party alleged that Wendland, the named insured, was negligent or liable in any manner. Therefore, Hollander was not an insured under the policy and, thus, plaintiff had no duty to defend or indemnify Hollander's estate.

¶ 30 Defendants argue that the umbrella policy "simply required [Wendland] to be 'using' the vehicle at the time of the occurrence." Defendants' interpretation ignores and eliminates the connection between "liable for the use of an automobile" and "by [Wendland]" from the definition above. If a named insured's use of the vehicle is all that is necessary to trigger a duty to indemnify under paragraph 6.c., then the phrase "to the extent they are *liable* for" is mere surplusage. (Emphasis added.) See *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 154 (2004) (a court must strive to give each term in a policy meaning unless to do so would render the clause or policy inconsistent or inherently contradictory (citing *Outboard Marine*, 154 Ill. 2d at 123)). Thus, Wendland's use of the vehicle, without more, is not sufficient to trigger coverage for Hollander. Rather, the underlying complaints must allege that Hollander was liable for Wendland's use. Because the underlying complaints do not contain any such allegations, Hollander is not an "insured."

¶ 31 Our opinion comports with federal cases that have analyzed similar insurance-policy language and underlying lawsuits and reached the same conclusion that we reach. For example, in *Vulcan Materials Co. v. Casualty Insurance Co.*, 723 F. Supp. 1263 (N.D. Ill. 1989), Michael Giguere, an employee of a trucking company, was killed while delivering a load of scrap metal to Vulcan Materials when he was struck by a magnet that fell from Vulcan's crane. *Id.* at 1263-64. The trucking company was insured by Casualty Insurance Company. Giguere's ex-wife and administrator of his estate sued Vulcan, and Vulcan tendered its defense to Casualty. *Id.* at 1264. Casualty denied that it was required to defend Vulcan. *Id.* Vulcan sued Casualty, seeking declaratory relief, arguing that Vulcan was an "insured" under Casualty's automobile liability policy issued to the trucking company. *Id.* The policy defined "insured" as (a) the trucking company and, in pertinent part, "(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)." (Emphasis and internal quotation marks omitted.) *Id.* Vulcan argued that the trucking company, the "named insured," negligently failed to train Giguere and, thus, the trucking company's liability arose "because of acts or omissions of an insured under (a)." (Internal quotation marks omitted.) *Id.* The court rejected Vulcan's interpretation. Instead, the court stated, "Paragraph (d) is plainly a vicarious liability provision and nothing more. It insures all those who may be vicariously liable for acts or omissions of the named insured." *Id.* at 1265. Because there was no basis for finding Vulcan vicariously liable for the trucking company's acts, the court ruled that Casualty had no duty to defend Vulcan. *Id.* at 1265-66.

¶ 32 Similarly, in *State Farm Mutual Automobile Insurance Co. v. Burgin*, 752 F. Supp. 877 (W.D. Ark. 1990), John Burgin was injured when a van in which he was a passenger—owned by Phillip and Charlotte Steele and driven by Ron Casteel—collided with another vehicle. *Id.* at 879. Casteel sought coverage under a policy issued to the Steeles by Shelter Mutual Insurance

Company (Shelter), under which the van qualified as a "non-owned auto." *Id.* at 879-80. State Farm brought a declaratory judgment action to determine which, if any, policy issued to the Steeles provided coverage for Burgin's injuries. *Id.* at 878. The Shelter policy included as "insureds" "any other person or organization which does not own or hire the [nonowned] auto but is liable for its use by one of the above persons." (Emphases omitted.) *Id.* at 880. The "above persons" included the Steeles and their relatives using the nonowned vehicle with their permission. *Id.* The court, applying Arkansas law, held that, under the terms of the insurance policy, Casteel was not an "insured," because Casteel "cannot be 'liable for [the van's] use by (the Steeles or their relatives).' " *Id.* In making this determination, the court looked to the underlying complaint and stated that "Burgin does not present a theory of liability encompassing [the Steeles or their relatives]." *Id.*

¶ 33 These cases are instructive to the extent that, because defendants in this case did not present a theory of liability stemming from Wendland, Hollander is not an insured.

¶ 34 Defendants also argue that applying the last-antecedent rule provides a reasonable interpretation of paragraph 6.c. or renders the term "insured" ambiguous. The last antecedent rule, a grammatical canon, "provides that relative or qualifying words, phrases, or clauses are applied to the words or phrases immediately preceding them and are not construed as extending to or including other words, phrases, or clauses more remote." *In re E.B.*, 231 Ill. 2d 459, 467 (2008). Again, the umbrella policy provided:

"6. '*insured*' means:

a. [Wendland and]

* * *

> c. any other person *** to the extent they are *liable* for the use of an automobile, recreational motor vehicle or watercraft by a person included in 6.a. ***." (Emphases added.)

Thus, by applying the last-antecedent rule, defendants contend that the final phrase, "by a person included in 6.a.," modifies only the word "watercraft" and not "automobile" or "recreational motor vehicle." Under defendants' interpretation, an "insured" includes any person who is liable for the use of any automobile regardless of their connection with the named insured or the insured vehicle.

¶ 35 We reject defendants' interpretation. The last-antecedent rule is a grammatical canon of construction resorted to only when terms are ambiguous. We believe that the terms of the umbrella policy are clear and unambiguous. As such, there is no need to resort to canons of construction such as the last-antecedent rule. See *Doctors Direct Insurance, Inc. v. Bochenek*, 2015 IL App (1st) 142919, ¶ 26 (rejecting use of the last-antecedent rule where statute was clear and unambiguous). Further, we reject defendants' creative interpretation because it is strained, forced, unnatural, and unreasonable and it leads to an absurd result. See *Bozek v. Erie Insurance Group*, 2015 IL App (2d) 150155, ¶ 19. Indeed, defendants' interpretation eliminates the phrase "by a person included in 6.a. [(the named insured, *i.e.*, Wendland)]."

¶ 36 Accordingly, we determine that the trial court properly granted summary judgment in plaintiff's favor.

¶ 37 III. CONCLUSION

¶ 38 For the reasons stated, we affirm the trial court's order.

¶ 39 Affirmed.